# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* CLARENCE H. HURLOCK, EXECUTOR OF ALONZO M. HURLOCK.

*On Appeal to Baltimore City Court from Assessment for Taxation Case to be Opened by Petitioner—Evidence on Direct Examination as to Assessor's Knowledge from Hearsay of Sales and Leases of Neighboring Property— Plat of Property Made by Tax Assessors Admissible in Evidence.*

Upon an appeal from the Appeal Tax Court to the Baltimore City Court from an assessment made of property for taxation, the presumption is that the assessment appealed against was correct, and the duty of opening the case on appeal rests on the property owner. And section 170 of the City Charter under which the appeal is allowed provides that in the absence of any affirmative evidence to the contrary, the assessment or classification of property appealed from shall be affirmed.

When the question is as to the validity of the valuation of property for assessment and taxation, the assessor who made or recommended the assessment is entitled, on direct examination, to mention the sales, leases and mortgages of other similar property upon which he based his valuation, although he had been informed of such sales, etc., by other persons, having himself no personal knowledge of them, or from an inspection of the land records.

And in such case, a plat made by the Appeal Tax Court showing the square or block of ground in which the property in question is located, and the assessment of other lots of ground in that block, and also the data as to sales, leases and mortgages of property in the neighborhood of which the assessors had been informed, is admissible in evidence.

*Decided November 16th, 1910.*

Appeal from the Baltimore City Court (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*German H. H. Emory* (with whom were *Edgar Allan Poe* and *Sylvan H. Lauchheimer* on the brief), for the appellants.

*Geo. Washington Williams, Jr.,* and *Bansemer & Solter,* for the appellee, submitted the cause on their brief.

PEARCE, J., delivered the opinion of the Court.

This appeal is from rulings made by the Baltimore City Court in an appeal to that Court from an assessment made by the Appeal Tax Court of Baltimore City, the only ground of complaint urged at the hearing being that the property assessed was overvalued and the assessment unequal as compared with property of the same kind in the same neighborhood. The property assessed was a house and lot No. 2131 North Calvert street, assessed for the purpose of taxation for the year 1910 as follows:

Lot....................................$1,947
Improvements...................... 3,500
                                    ———— $5,447.

Section 170 of the Charter of Baltimore City, under which this appeal was taken, was amended by Chapter 167 of the Acts of 1908, the amended part of said section being transcribed as follows:

"The person or the city appealing to the said Baltimore City Court shall have a trial before the Court without the intervention of a jury, and the Court sitting without a jury, *shall hear the case de novo, and* shall ascertain and decide on the proper assessment, *or classification of the property for the year involved in the appeal; and neither the action, nor the*

*record of the proceedings of the Judges of the Appeal Tax Court in the premises shall be held to be, or declared void for any reason whatever; provided due notice of the proceedings shall have been given to the parties entitled, by said Judges of the Appeal Tax Court; and the said Baltimore City Court shall assess anew, or classify anew, as the case may be, the property forming the subject of appeal; provided, however, that in the absence of any affirmative evidence to the contrary, the assessment or classification appealed from shall be affirmed."*

The underscored lines in this transcript embrace every material amendment of this section, and the purpose of these amendments becomes obvious when reference is had to certain decisions of this Court affecting that section as it stood before these amendments. It was held in *Baltimore City* v. *Poole,* 97 Md. 72, that relief against erroneous classification could only be had in a Court of Equity, and in *Consolidated Gas Co.* v. *Baltimore City,* 101 Md. 559, an assessment by the Appeal Tax Court had been declared void, as no assessment at all; but under that section as now amended, erroneous classification may be corrected on appeal, and no assessment can be declared void but the City Court must assess the property in question anew.

When this appeal came on to be heard, the defendants, before any testimony was taken, moved the Court to rule that the duty of opening the cause rested upon the petitioner, but the Court overruled this motion, and held that the duty of opening the cause rested upon the defendants who took the first exception to this ruling.

In 27 *Amer. & Eng. Enc. of Law,* 2nd Ed., page 728, it is said: "In accordance with the universal presumption in favor of the regularity and validity of official acts, tax assessments, made in the line of official duty, are presumably correct, and the burden of showing the contrary is upon the person claiming to be aggrieved. Accordingly, it will be presumed that proper notice was given; that a correct method

of valuation was used, *and that a fair valuation was placed on the property.*"

In *Cooley on Taxation,* Vol. 1, page 447, note 1, 3rd Ed., the author says: "Tax assessments made in the line of official duty are entitled to the usual presumption of correctness which attends the acts of public officers," and there are abundant decisions holding that the valuation placed upon property by official assessors is presumed to be fair. Among these are, *State* v. *W. U. Tel. Co.,* 165 Mo. 502; *Williams* v. *Bettle,* 50 N. J. L. 132; and *Chicago Union Traction Co.* v. *Board of Equalization,* 112 Fed. Rep. 607, in which JUDGE GROSCUP said: "We are bound to believe that the board will exercise its function as contemplated by law, and will avoid overvaluation."

Appeals from assessments for taxation find their closest analogy in condemnation proceedings, and in 15 *Enc. Pl. & Pr.,* 193, it is said: "The Courts in the majority of States, following the rule that in cases where the damages are not fixed in amount or ascertainable by simple calculation, the party seeking to recover them is entitled to open and close the evidence and argument, in condemnation proceedings have awarded the right to open and close to the land owner." The same doctrine is held in 1 *Elliott on Evidence,* secs. 133, 180 and 181. There is not complete uniformity in the cases in this respect, but we think the weight of authority is as stated in the *Enc of Pl. and Pr.* above, and the rule stated was upheld in *Conn. River R. R. Co.* v. *Clapp,* 1 Cush. 559, and in *Minnisemel* v. *Grueby,* 111 Mass. 543.

In 16 *Cyc.* 931, it is said: "The rule regulating the burden of proof in special judicial proceedings is the same that governs where an issue has been formulated by the pleadings. He who asks affirmative relief, one for example who appeals from an order * * * has the burden of convincing the Court that action should be taken in his favor."

The right to open and close accompanies the burden of proof, unless otherwise clearly provided by law. Hence it

follows, as stated in 15 *Enc. Pl. & Pr.,* 183-4: "The test is that the right belongs to the party against whom judgment would be rendered if no evidence were introduced on either side."

In *Consol. Gas Co. v. Balt.,* 101 Md. 559, this Court expressly declared that "presumptions are in favor of the correctness of assessments," citing 27 *Amer. & Eng. Enc. L.,* 2nd Ed., 728, *supra,* though it held there was error *in that case* in granting a prayer that the burden of proof was on the Gas Company to show by a preponderance of testimony that the assessment was erroneous; but this was only because the Court had held there was in that case *no valid* assessment, and that there must be a valid assessment before there can be a presumption in favor of its accuracy.

It will be seen that the amended section under which this case arises, embodies and emphasises in its closing proviso. the presumption of accuracy, of assessments thus brought under review, which is declared in 101 Md., *supra,* to exist.

We must assume that the ruling we are now considering was based upon the requirement to hear the case *de. novo.* and in analogy to the practice in appeals from Justices of the Peace, which are required to be heard *de novo,* and in which the plaintiff below has the burden of proof, and must open the cause, whether he be appellant or appellee; and the argument of the appellee in the case before us proceeds upon the theory that the same rule and reason necessarily applies here. But that view ignores the proviso which requires the affirmance of the assessment in the absence of any affirmative evidence to the contrary, and it thereby gives to the words *de novo* an effect and scope clearly denied to them by that proviso. Construing that section as a whole, the full intended effect is given to those words, by holding that the *assessment* is to be *de novo,* or *anew,* in order to avoid a total failure of any assessment, such as occurred in 101 Md., *supra,* and would occur under the original section

170, whenever it became necessary to set aside an assessment appealed from.

Whatever conclusion might be drawn from the words *de novo,* if the burden of proof was not fixed by the proviso embodied in this section, effect must be given to that proviso, which thus becomes decisive of this question.

In 15 *Enc. Pl and Pr.,* 198, it is said that where on appeal the trial is *de novo,* the same rule applies as if the cause had been instituted in the appellate Court, and it was so held in *Ind. R. R. Co.* v. *Cook,* 102 Ind. 133.

If, in the case before us, even under the ruling appealed from, the city had offered no evidence, and the petitioner had offered none, the Court would have been compelled, under the operation of the proviso, to affirm the assessment, thus demonstrating the correctness of the test given above in the *Enc. Pl. and Pr.* as to the right to open and close in this case. We have been referred in a supplemental brief filed by the appellee since the argument of this case, to the case of *Mayor and City Council of Baltimore* v. *Smith and Schwartz Brick Company,* 80 Md. 458, as establishing a different rule. That was an appeal to the Baltimore City Court from an assessment of *benefits* in an award of the Commissioners for Opening Streets, and it was held that the burden of proof in *such* case "was on the city to establish the benefits this property was to be charged with." But the distinction in principle between the two cases, is obvious and fundamental. All property has some value for assessment for taxation, and all property is required to be assessed for that purpose by official assessors, whose valuation is presumed to be fair, until shown to be unfair. There is no question in those cases as to the *fact* of value. The only question is as to the *amount* of value. But in the case of assessing *benefits* from opening a street, the initial question is as to the *existence* or creation of benefits as a *fact.* The opening of the street may result in damage instead of benefit to the property. Before the alleged benefits can be assessed, it

must be shown that there are benefits to be assessed, and the burden of proof is, and must be, upon every principle of law, upon the one alleging the existence of benefits, not only to show the existence, but the extent of such benefits, and therefore it was the Court said in that case: "There is no presumption of law *in these cases* that the assessment of the Commissioners is correct." That case is one of the exceptions which proves the general rule laid down in the authorities we have cited.

There was error in the ruling on this exception.

The second, third and fourth exceptions may be considered together, as they present substantially the same question.

Alfred D. Bernard who for six years previous to that time had been one of the special assessors to the Appeal Tax Court, testified that he passed in the performance of his duties, as such assessor, upon the assessment from which this appeal was taken. After stating that the lot was assessed at $95 per front foot and the improvements at $3,500, making $5,447, he testified upon his direct examination that the assessors personally examined the property, and "were guided by their personal knowledge of sales and rentals in the neighborhood; also by sales and rentals of which they had information from owners and tenants; also by sales recorded in the special assessors' card index." This card index gave history of sales and rentals all over the city derived from the work of certain special assessors of the Appeal Tax Court, and from auctioneers who had themselves made the sales reported by them.

He was then asked to give the data relied on by him in making this assessment, which related exclusively to sales, leases, or mortgages upon property in that neighborhood of which he was informed by others, and to give in each case the source of his information. This was objected to, and the Court sustained the objection unless the information sought related to the property which was the subject of this appeal

and had been given by the petitioner.   This is the second exception.

He was then asked to give the data and information relied on in making this assessment, and which was derived exclusively from an inspection of the Land Records.   This was objected to and the objection was sustained, and this presents the third exception.

He was also asked to give the data and information relied on in making this assessment, as to sales, leases and mortgages on property in the neighborhood, and derived personally from the vendors, vendees, lessors, lessees, mortgagors or mortgagees themselves, other than the petitioner in this case.

This was objected to, and the objection was sustained, and this presents the fourth exception.

The ground of these objections to the evidence sought to be introduced, as stated by the appellees, is that it was all hearsay and *therefore* inadmissible in direct examination, though permissible upon cross-examination in order to ascertain the weight and value of the witness' opinion.

There appears to be considerable diversity in the cases upon this question, and respectable decisions are to be found both ways, but we think upon principle the testimony thus excluded should have been admitted and this view is sustained by the weight of authority.

In 17 *Cyc.* 109 it is said: "A skilled witness testifying as an expert may give the reasons for his judgment.   The basis may include the result of inquiries made of others, or the fact of relevant sales known to the witness.   An estimate not so fortified may be rejected, as the reliability of the estimate cannot be determined."   In *Dickinson* v. *Fitchburg,* 13 Gray, 555-6, it was held that "a witness who has testified to his opinion of the value of land taken for a highway may be asked on his examination in chief, the facts and reasons on which his opinion is founded."   In that case CHIEF JUSTICE SHAW said: "It is objected that the admis-

sion of the evidence would open the door to evidence entirely incompetent, by allowing the witness to state the facts on which the opinion is founded, facts not proved by competent evidence. This objection seems to us to be founded on a misconception of the manner in which the investigation is conducted, and the testimony of experts received and applied. It assumes that the facts will be taken to be true, because the witness has stated that he founds his opinion upon them. But this is quite a mistake. This inquiry has been more frequently made in cross-examination, yet we are of opinion that it is competent evidence in chief."

It is true that in *Pierson* v. *Boston El. Ry.,* 191 Mass. 293, and in *Hunt* v. *Boston,* 152 Mass. 168, it was held otherwise, the Court saying in the latter case, "that it was now settled in Massachusetts upon direct examination, even though properly admitted on cross-examination to test and *diminish* weight of opinion." We think however the older decision to be sounder than the later, and to be a higher authority for us, however its authority may be impaired in Massachusetts by later decisions of the Courts of that State. Surely, if the weight of such an opinion may be *diminished* by the admission of such testimony upon cross-examination, it should be competent to fortify and *increase* it, by the admission of similar testimony upon direct examination.

In *Hanover Water Co.* v. *Ashland Iron Co.,* 84 Pa. St. 279, the action was one for damages for diversion of water whereby a farm with an ore bank was injured. The witness owned land in the neighborhood and knew its market value; knew the tract in question, and that it had an ore bank on it, and knew the general value of ore land in the neighborhood, but his knowledge of sales was derived from hearsay, and he had no practical knowledge of ore land never mined. It was held that his opinion was competent evidence to aid in determining the value of the land. C. J. SHARSWOOD said: "Why should he not be allowed to give its value, though he said his knowledge was derived from hearsay and was not

practical knowledge? The knowledge that the best expert possesses upon this subject is derived from hearsay."

In *Chicago & N. W. R. W.* v. *Chicago,* 154 Ill. 657, it was said: "The facts upon which opinions of expert witnesses as to the value of property proposed to be taken in condemnation proceedings, may be stated by them, either in chief, or upon cross-examination." The opinions are admissible along with the facts on which they are based, as their weight and value depends largely upon the foundation of fact and reason upon which they stand."

In *Hawes* v. *Warren,* 119 Fed. Rep. 978, JUDGE PUTNAM said: "In stating opinions as to the value of a building destroyed by fire, witnesses should be *required* to state the grounds on which their estimates are based, otherwise the reliability of the estimate cannot be determined. This should be tested thoroughly by *examination* and cross-examination."

Mr. Wigmore says, Vol. 1. sec. 562: "An expert witness, like any other witness, may be asked *on direct examination, or may be required* to state the grounds of his opinion, *i. e.,* the general data which form the basis of his judgment upon the specific data observed by him. This is merely an application of the general principle of the knowledge qualification. * * * The party offering a witness may desire to make plain the strength of the witness' ground of knowledge, and the reasons for trusting his belief. This is a legitimate purpose. * * * The general rule is that the witness may, on the direct examination, state the particular circumstances which legitimately affected his knowledge or recollection, *even though the fact would be otherwise inadmissible.* The judges' instruction to the jury must be relied on for preventing their improper use of the fact."

We have referred to decisions elsewhere at some length because these were so fully presented in the briefs, but the case of *Mayor and City Council* v. *Smith, supra,* is in complete accord with the principles determined in the cases cited. In

that case, the 4th and 5th bills of exception related to the
mode of proving the market value of the property assessed
for benefits, and evidence similar to that sought in this case
was admitted there.    Upon the appeal, Mr. Carter cited
many authorities showing that witnesses on value in such
cases may be required to give the reasons on which the
opinions they express are based, either on direct or cross-
examination, and this Court affirmed the rulings, holding
"that the prices realized at sales of the land in question, and
of similar land in its vicinity, made within a reasonable
time theretofore, and not forced sales, are admissible in evi-
dence either on direct examination or cross-examination of
witnesses conversant with the facts."    In *Consolidated Gas
Co. v. Baltimore City,* 105 Md. 43, this question was pre-
sented, the principle involved being embraced in eleven dis-
tinct exceptions, raising in various forms the question
whether it was competent to inquire from the members of
the Appeal Tax Court what were their methods and mental
processes in reaching the assessment they had made of the
easement of the Gas Company in the city streets for the pur-
pose of showing that it was excessive or illegal.    These eleven
exceptions were considered and disposed of as one group,
and one of them (the 13th) was taken to the following ques-
tion propounded to the late JUDGE SAMS, then a member of
the Appeal Tax Court. "I would like you, JUDGE SAMS, to
tell the Court in arriving at this conclusion of six millions
of dollars, what the Court actually did; by that I mean,
what information did you get, and from whom, whether you
took any evidence or not; whether you made any inspection
of the locality where these mains are; in other words in
that line what did you do in arriving at this conclusion", and
we held that the objection to that question was erroneously
sustained.    We there relied upon the practice established in
condemnation cases by the decision in *Tide Water Canal
Co. v. Archer,* 9 G. & J. 317, and held that the reasons
which governed that decision applied in full force to the

case then before the Court, as we hold they do to the case
now before us. Those reasons are stated at length in *Canal
Co. v. Archer* and it is unnecessary to repeat them here.
The conclusion reached in the *Gas Co's. Case, supra,* is
strengthened by the reconsideration we have given it in the
present case, and by the authorities we have here reviewed,
and for the reasons we have stated we are of opinion that
the Baltimore City Court erred in excluding the evidence
offered in the 2nd, 3rd and 4th exceptions.

The witness, Bernard being still on his direct examination
and having in his hand a diagram belonging to the Appeal
Tax Court relating to the property in question, explained
that it was a plat showing the block in which this property
was located, together with the analysis of the assessors of
the lots in the diagram liable to taxation, and the assess-
ment description of these lots, the rate per foot and the
amount the improvements were assessed for; and stated that
this diagram was produced in Court in obedience to the
order of Court made at the institution of this suit, in ac-
cordance with section 170 of the Baltimore City Charter,
which requires the issuance of a *subpœna duces tecum* to the
Judges of the Appeal Tax Court to deliver to the City
Court, "the record of the proceedings of the Appeal Tax
Court, and all maps, plats, documents and other papers con-
nected with said record." He also said that all the data
referred to in the second, third and fourth exceptions were
entered up in that diagram, together with a single item of
information from the petitioner, showing the gross rentals
of that lot. The appellant then offered this diagram in evi-
dence, and the Court admitted so much as showed the assess-
ments in the block, but sustained the objection of the peti-
tioner to the offer as to so much of the diagram as related to
the sales, leases and mortgages, and this constitutes the fifth
and last exception. The appellee in his brief treats this
exception as identical in principle with the second, third and

fourth, and in this we agree with him, so that it follows there was error in this ruling also.

The appellant however treats this exception separately, and asserts that section 170 of the charter makes the diagram, with all it contains, evidence in the case, since the only possible object of requiring it to be produced at the trial and delivered to the Court, was that it should be used as evidence in the trial, and that the Court cannot exclude what the Legislature has declared to be evidence in the case. It is not necessary however, in this case, to pass upon this construction of that provision of the charter, as to which we express no opinion.

> *Rulings and judgment reversed and new*
> *trial awarded with costs to the appel-*
> *lant above and below.*