This suit was brought by the appellees against the Baltimore and Ohio Railroad Company to recover damages alleged to have been caused to a lot of ground and improvements thereon located on the northeast corner of Howard and Stockholm streets, in the city of Baltimore, by the erection of a bridge over Howard and Eutaw streets and the construction of the concrete walls and abutments, forming the approach to said bridge from the east.
The aforesaid lot of ground extends on Stockholm street (somtimes spoken of and referred to in the record as Ostend street), from Howard street to Plum alley, a distance of one hundred and fifty-five feet and binds on Howard street a distance of one hundred feet. The improvements thereon which are used as a warehouse consist of a five-story brick building immediately upon the corner of Howard and Stockholm streets that fronts forty-nine feet on Stockholm street, and runs back the entire depth of the lot on Howard street; and a four-story brick building that fronts on Stockholm street and extends from the corner building to Plum alley, with a depth of thirty-five or forty feet.
Prior to the erection of the bridge and the construction of the approach thereto, the width of Stockholm street was *Page 239 
sixty-six feet between the building lines and thirty-nine feet and seven inches between its curbs.
The approach to the bridge is on the south side of Stockholm street and consists of a solid concrete structure thirty-seven feet in width, which starts at Sharp street and gradually ascends to the bridge at Howard street; ten feet of the approach lying next to the southern building line of the street is a foot-way or sidewalk and north of that is a roadway twenty-five feet in width for the use of vehicles. The remaining width of two feet is in the solid wall of the approach. The height of the approach in front of the plaintiffs' property at Plum alley is seven feet, and at Howard street fourteen feet, and upon the north wall of the approach is an iron railing extending from Sharp to Howard streets, and with this railing added the height of the approach at Plum alley is eleven feet, and at Howard street eighteen feet. The distance between the concrete abutment or north wall of the approach and the north curb of Stockholm street is fifteen feet and the width of the pavement from the curb to the warehouse is twelve feet and ten inches.
The bridge and approaches thereto were erected and constructed by the defendant company under the authority conferred upon it by ordinance No. 387 of the Mayor and City Council of Baltimore, approved August 16, 1909, and by this ordinance, which was accepted by the company, the entire cost of the work was to be paid by the defendant. The objects that were to be accomplished by the passage of the ordinance and the circumstances under which it was passed and the liability of the defendant company thereunder are fully stated and discussed in the cases ofWalter v. B. O.R.R. Co., 120 Md. 644; B. O.R.R. Co. v.Kane, 124 Md. 231; B. O.R.R. Co. v. Kahl, 124 Md. 299.
In the last of these cases the conditions affecting the plaintiffs' right to recover were practically the same as those found in this case, and what we there said as to the liability of the defendant is controlling in this case. In that case we said, "upon the principles in the Kane case, the B. O.R. *Page 240 
R. Co. is liable for such consequential damages as may have resulted to the plaintiffs' property from the construction of the approaches and bridge."
At the conclusion of the evidence, the plaintiffs offered two and the defendant six prayers, all of which were granted by the Court.
The plaintiffs' prayers are, we think, fully in accord with the decisions of this Court in the cases to which we have referred and we find no error in the ruling of the Court thereon.
In the course of the trial twenty-four exceptions were taken to the admission or rejection of evidence. The first of these was to the action of the Court in permitting the plaintiff to read to the jury certain parts only of the ordinance above referred to, known as the "Grade Crossing Ordinance," after the same had been introduced in evidence without objection. The correctness of this ruling is fully sustained by the decision of this Court inHanrahan v. Baltimore City, 114 Md. 517. In that case exceptions were taken to the refusal of the Court to allow the plaintiff's counsel to read to the jury certain paragraphs of a contract that had been previously offered generally and admitted in evidence without restriction to any part, as was the ordinance in this case, and this Court there said, speaking through JUDGE PEARCE: "Under these circumstances we are not aware of any principle upon which the plaintiff could be precluded from calling the attention of the jury to such provisions as it deemed material to her interest."
The entire ordinance containing twenty-nine printed pages was before the jury without objection. It contained many provisions that had no special bearing upon or relation to the issues presented, and we know of no principle of law or rule of evidence that was violated by the Court in not requiring the entire ordinance to have been read or in permitting the plaintiffs' counsel to read such parts of it as they deemed material to their interest. *Page 241 
The second exception is taken to the ruling of the Court in admitting in evidence the signed acceptance of the ordinance by the defendant company. There was no error in this ruling in view of what we have said in the above mentioned cases as to the liability of the defendant for loss and injury resulting from its exercise of the authority conferred upon it by the ordinance. It was proper, we think, to show the acceptance of the ordinance conferring such authority.
The 3, 4, 5, 13, 14, 16 and 17 exceptions may be considered and treated together. These exceptions are to the admission of expert testimony as to values, and the objection made thereto is that such expert witnesses were allowed "on direct examination to testify to sales of which they had no personal knowledge." This same objection was made to like testimony offered in the case ofBaltimore v. Hurlock, 113 Md. 674. This Court, speaking through JUDGE PEARCE, said: "The ground of these objections to the evidence sought to be introduced, as stated by the appellees, is that it was all hearsay, and therefore inadmissible in direct examination, though permissible upon cross-examination, in order to ascertain the weight and value of the witness' opinion.
"There appears to be considerable diversity in the cases upon this question, and respectable decisions are to be found both ways, but we think upon principle the testimony thus excluded should have been admitted and this view is sustained by the weight of authority.
"In Dickinson v. Fitchburg, 13 Gray, 555-6, it was held that `a witness who has testified to his opinion of the value of land taken for a highway may be asked on his examination in chief, the facts and reasons on which his opinion is founded.' In that case CHIEF JUSTICE SHAW said: `It is objected that the admission of the evidence would open the door to evidence entirely incompetent, by allowing the witness to state the facts on which the opinion is founded, facts not proved by competent evidence. This objection seems to us to be founded on a misconception of the manner in which the investigation is conducted, and the testimony of experts *Page 242 
received and applied. It assumes that the facts will be taken to be true, because the witness has stated that he founds his opinion upon them. But this is quite a mistake. This inquiry has been more frequently made in cross-examination, yet we are of opinion that it is competent evidence in chief. It is true that in Pierson v. Boston E. Ry., 191 Mass. 223, and in Hunt v.Boston, 152 Mass. 168, it was held otherwise. The Court saying in the latter case, `that it was now settled in Massachusetts upon direct examination, even though properly admitted on cross-examination to test and diminish weight of opinion.' We think, however, the older decision to be sounder than the latter, and to be a higher authority for us, however its authority may be impaired in Massachusetts by later decisions of the Courts of that State.'
"Mr. Wigmore says, Vol. 1, sec. 562: `An expert witness like any other witness may be asked on direct examination or may be required to state the grounds of his opinion, i.e., the general data which form the bases of his judgment upon the specific data observed by him. This is merely an application of the general principle of the knowledge qualification. * * * The party offering a witness may desire to make plain the strength of the witness' ground of knowledge and the reasons for trusting his belief. This is a legitimate purpose. * * * The general rule is that the witness may on the direct examination, state the particular circumstances which legitimately affected his knowledge or recollection, even though the fact would beotherwise inadmissible." Hanover Water Company v. Ashland IronCompany, 84 Pa. St. 279; Chicago N.W.R.W. v. Town ofCicero, 154 Ill. 656; Hawes v. Warren, 119 Fed. Rep. 978.
After a careful examination in each of these exceptions we find the rulings of the Court thereon consistent with the decision of this Court in Baltimore v. Hurlock, supra. The evidence was therefore, in our opinion, properly admitted.
The objection urged against the admission of the evidence mentioned in the 6, 7, 8, 11, 15, 18, 19, 21 and 23 exceptions *Page 243 
was that expert witnesses were allowed to testify that plaintiffs' property "had been damaged."
Each of the witnesses testified fully as to the value of the property both before and after the erection of the bridge and the construction of the approaches thereto, thereby showing a depreciation in the value of the property and the amount of such depreciation, and we are clearly of the opinion that whatever may be said as to the admissibility of this testimony, that the defendant was in no way injured by its admission.
In the course of the trial two leases of this property were introduced in evidence, one executed before and one after the erection of the bridge and approaches. In each of these leases the pecuniary consideration named therein, to be paid as a rental for the property, was thirty-five hundred dollars per annum,
and it was contended by the defendant that because of this fact the value of the property — investment property as denominated by it — was not lessened by the erection of the bridge and approaches, and this was the position taken by at least one of the witnesses produced by the defendant in ascertaining the value of the property before and after the bridge and approaches were erected. Mr. Ferguson also used, in addition to other methods, what we may term the rental value method, in ascertaining the value of the property both before and after such time, but in so doing he estimated the value to the lessor of certain burdens and requirements imposed upon the lessee by the terms of the former lease, that were not found in the latter lease, at the sum of five hundred dollars per annum, making the annual rental under the former lease four thousand dollars, while the rental value under the latter lease was but thirty-five hundred dollars. In this connection he was asked "can you indicate to his Honor and the jury * * * what provisions you had reference to when you said provisions of that old lease in your opinion made the rent practically four thousand dollars?" This question was objected to but the witness was permitted to answer it by pointing out certain provisions *Page 244 
in the lease requiring the lessee to do certain things among which was that he should "keep the whole building equipped with automatic sprinklers and necessary attachments thereto, and such other approved appliances and methods on and within said building, as shall insure the best fire protection as to all inside openings and doorways, and to the whole of the interior of the building generally recommended and approved by the regulations of the Association of Fire Underwriters of Baltimore City." The admission of this testimony forms the 9th exception. The defendant in his brief says, in discussing this ruling, that the lease was "an ordinary contract for the renting of property. The terms of it which the witness perverted were ordinary terms used in such a contract. If any interpretation was desired it will be done by the Court, otherwise the only competent evidence of its meaning was the paper itself." The defendant it seems has misconceived the purpose or object of this testimony. The witness was not usurping the functions of the Court by interpreting the terms of the lease with a view of ascertaining its meaning as claimed by the defendants, but was simply placing a pecuniary value upon the burdens and requirements imposed upon the lessee that inured to the benefit of the lessor, which was to be considered with the thirty-five hundred dollars that was paid in money, in ascertaining the full rental of said property. This evidence we think was properly admitted. What we have said as to the 9th exception applies also to the 10th exception, and we find no reversible errors in the rulings of the Court upon the 12-20 and 22 exceptions. In view of what we have said in the earlier cases to which we have referred, we find no error in the ruling of the Court in excluding the evidence mentioned in the 24th exception.
The judgment of the Court below will be affirmed.
Judgment affirmed, with costs to the appellees. *Page 245