DELAWARE, LACKAWANNA & WESTERN RAILROAD COM-
PANY, RESPONDENT-APPELLANT, v. CITY OF HOBO-
KEN, PETITIONER-RESPONDENT AND CROSS-APPEL-
LANT, AND STATE OF NEW JERSEY, RESPONDENT-
APPELLANT.

DELAWARE, LACKAWANNA & WESTERN RAILROAD COM-
PANY, RESPONDENT-APPELLANT, v. CITY OF JERSEY
CITY, PETITIONER-RESPONDENT AND CROSS-APPEL-
LANT, AND STATE OF NEW JERSEY, RESPONDENT-
APPELLANT.

CITY OF HOBOKEN, PETITIONER-APPELLANT, v. DELA-
WARE, LACKAWANNA & WESTERN RAILROAD COM-
PANY, RESPONDENT-RESPONDENT, AND STATE OF
NEW JERSEY, RESPONDENT-APPELLANT.

CITY OF JERSEY CITY, PETITIONER-APPELLANT, v. DELA-
WARE, LACKAWANNA & WESTERN RAILROAD COM-
PANY, RESPONDENT-RESPONDENT, AND STATE OF
NEW JERSEY, RESPONDENT-APPELLANT.

Argued September 15, 1952—Decided October 20, 1952.

420

Mr. *Raymond J. Lamb* argued the cause for appellant-respondent Delaware, Lackawanna & Western Railroad Company (*Messrs. Markley & Broadhurst,* attorneys).

Mr. *Milton B. Conford* argued the cause for the cities, petitioners-respondents and cross-appellants (*Mr. Dominick*

*J. Marrone,* attorney for the City of Hoboken; *Mr. John B. Graf,* attorney for City of Jersey City).

*Mr. Benjamin C. VanTine* argued the cause for respondent-appellant State of New Jersey (*Mr. Theodore D. Parsons,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.    When the Director of the Division of Taxation levied class II railroad property tax assessments for 1949 under *R. S.* 54:29A–17 upon the main terminal in Jersey City and Hoboken and the 11th Street freight station in Hoboken of the Delaware, Lackawanna & Western Railroad Company, reducing by approximately 10% the assessments thereon which had been uniformly made per acre from 1939 to 1948, both the cities and the railroad appealed to the Division of Tax Appeals, *R. S.* 54:29A–31, making the State a party respondent, *R. S.* 54:29A–32. The railroad contended that despite the reductions the assessments were still excessive.    The cities contended that the assessments were insufficient and indeed should have been made in amounts exceeding the 1939-1948 valuations.    The Division of Tax Appeals, after extended hearings before a panel of the Division, *R. S.* 54:2–18, and the taking of voluminous evidence, principally testimony of expert witnesses, entered judgments canceling the reductions made by the Director.    Appeals and cross-appeals were then taken by the railroad and the cities to the Appellate Division which entered judgments sustaining the judgments of the Division of Tax Appeals upon the main terminal (unanimously as to the segment thereof known as the Little Ferry tract and one judge dissenting as to the remainder, and bulk, of the terminal) but reversing the judgment in respect of the 11th Street freight station, restoring the Director's assessment thereon.    16 *N. J. Super.* 543 (1951).    The cases are here on the appeals, or certifications granted on petition therefor, of the several parties including the State, from the judgments entered in the Appellate Division.

The Appellate Division considered that it was obliged to sustain judgments of the Division of Tax Appeals "unless the evidence preponderates against" the valuations determined by that body. 16 *N. J. Super.*, at *p.* 550. The court accordingly reviewed the record for evidence supporting the determinations of the Division of Tax Appeals. The conclusion reached was that the valuations for the main terminal were sustained by evidence but not those for the tracts comprising the 11th Street freight station. The opinions upon valuations of the opposing groups of experts were deemed to be of "slight help," "their partisanship is too evident." The reasoning of the majority as to the bulk of the main terminal was that there "has been a steady shrinkage in the value of money" since 1941 and the majority, therefore, "in the absence of compelling evidence" was unwilling to overrule the Division of Tax Appeals, as so to do was viewed to be tantamount to holding that "the Lackawanna Terminal tract, contrary to the universal trend, decreased in value during that period." The valuation of the Lower Ferry segment was unanimously sustained on the strength of evidence of sales of nearby steamship piers in 1946 and 1948. The judgments as to the tracts making up the 11th Street freight station were unanimously reversed upon findings that there was no evidence to sustain the determinations of the Division of Tax Appeals and some support for the Director's values in evidence of sales by the railroad of parcels contiguous to those tracts.

Our review of the record persuades us that the cases must be remanded to the Division of Tax Appeals for further proceedings. There is a fatal defect in the record. The parties have not had the benefit of findings of fact by the Division of Tax Appeals as required by *R. S.* 54:2–16. The deficiency was not remedied in the Appellate Division by an independent determination by that court of the basic facts and the making of its own assessments based thereon. However, we have held that usually the better appellate practice in cases presenting complex questions of value such as this is not to exercise the power conferred by *Article VI,*

*Section V, paragraph 3* of the *Constitution of* 1947 and *Rule* 3:81–13 independently to review the facts and make the assessment. *City of Newark v. West Milford Tp., Passaic County,* 9 *N. J.* 295, 301 (1952). Appellate courts should not inject themselves into the field of original valuation in such cases except in very exceptional circumstances. *Cf. Kendrick Coal & Dock Co. v. Com'r. of Internal Revenue,* 29 *F. 2d* 559 (*C. C. A.* 8, 1928). The valuation of property in railroad use particularly presents "highly technical" problems for experts. *Long Dock Co. v. State Board of Tax Assessors,* 86 *N. J. L.* 592 (*E. & A.* 1914), reversing *Long Dock Co. v. Hendrickson,* 85 *N. J. L.* 536 (*Sup. Ct.* 1914). The coordination and evaluation of such expert evidence is often a matter of considerable difficulty because of the unique problems entailed· in the valuation of properties in railroad use and the increment in value, if any, resulting from the assemblage and consolidation of several tracts, *Pennsylvania Railroad Co. v. Jersey City,* 98 *N. J. L.* 283 (*E. & A.* 1922). The task of coordination and evaluation of such evidence has been expressly committed by the Legislature to the Division of Tax Appeals, a body contemplated to bring an informed judgment from specialized experience to the nice balancing and ultimate resolution of the many complex factors involved.

Therefore, as the Appellate Division did not choose to make its own findings and assessments, justice to the parties and considerations of the principles governing judicial superintendence of this important administrative agency required that the cases be returned to the Division of Tax Appeals for new determinations based upon adequate findings of fact in compliance with its clear duty under *R. S.* 54:2–16 to "reduce to writing its findings of fact" underlying its "decision" and to enter of record such "findings" together with its "decision."

We have said that the statutory "requirement of findings is far from a technicality and is a matter of substance." *In the Matter of the Arbitration between N. J. Bell Telephone Co. v. Communications Workers of America, etc.,* 5 *N. J.* 354, at 375 (1950). And we have consistently

refused to sustain the determinations of administrative agencies which have failed to supply such findings in violation of a statutory requirement. *Pennsylvania Railroad Co. v. N. J. State Aviation Commission,* 2 *N. J.* 64 (1949); *Central R. R. Co. of New Jersey v. Department of Public Utilities,* 7 *N. J.* 247 (1951); *In the Matter of the Arbitration between N. J. Bell Telephone Co. v. Communications Workers, etc., supra.* The validity of such requirement is sufficiently sustained in practical considerations and we need not inquire too closely for a constitutional basis. *Davis on Administrative Law* (1951), *pp.* 521 *et seq.; Feller, Prospectus for the Further Study of Federal Administrative Law,* 47 *Yale L. J.* 647 (1938); *Saginaw Broadcasting Co. v. Federal C. Comm.,* 68 *App. D. C.* 282, 96 *F. 2d* 554 *(Ct. App. D. C.* 1938), *certiorari* denied *sub nom. Gross v. Saginaw Broadcasting Co.,* 305 *U. S.* 613, 59 *S. Ct.* 72, 83 *L. Ed.* 391 (1938). *Feller, supra,* at *p.* 666, observes:

"It would profit us little to try to find a rational constitutional basis for the requirement. It should suffice that the practical basis is sound enough. The requirement is an excellent one. The advantages of carefully drawn findings are immense. They induce a sense of responsibility on the part of the administrative officer; their formulation aids immeasurably in the formulation of the decision; they limit the issues to be decided on review and save the time of litigants and the courts. All these advantages flow from findings carefully drawn; if they are merely perfunctory they are completely useless."

█ Moreover, we have stressed that upon appellate review of judgments of the Division of Tax Appeals upon questions of valuation

"The duty of the appellate court under these rules in this class of cases is to review the evidence and render such decision as it deems proper in the light of that evidence but not to disturb the judgment of the Division of Tax Appeals unless the evidence is persuasive that the administrative tribunal erred." *Aetna Life Insurance Co. v. City of Newark,* 10 *N. J.* 99, at 104 (1952).

How is an appellate court intelligently to determine whether or not the "evidence is persuasive" that the Division erred without having the Division's findings of fact reflecting its informed judgment as evinced by the manner

in which it coordinates and evaluates the evidence in formulating its decision? We have before us some 3,041 pages of printed record made before the panel over the course of several months. The "report" filed by the panel with the full Division in purported compliance with *R. S.* 54:2–18 consists merely of a summary of the evidence. The panel itself characterized its "report" as "more or less only a 'glorified' index to aid the other members of the Division as a guide to select the important parts of the record for consideration as to final judgment and determination." The record is made up principally of the testimony of expert witnesses. As has become commonplace in such proceedings, the opinions of the opposing groups of experts are utterly unreconcilable. The railroad's experts testified to values approximately one-half of the Commissioner's assessments. The cities' experts testified to values about 50% higher than the assessed valuations for 1939 to 1948. Yet the Division of Tax Appeals supplied no fact findings from this welter of conflicting evidence which enlighten us how it arrived at the conclusion that the true values of the assessed properties were the same for 1949 as they were from 1939 to 1948. For all that appears, the Division's conclusions may rest upon considerations wholly foreign to the evidence in the record. Is it not understandable that we query here, as we did in another case, whether the judgments "are predicated upon facts or speculation, and if upon facts, what facts?" *In the Matter of the Arbitration between N. J. Bell Telephone Co. v. Communications Workers of America, etc., supra,* at *p.* 375. Mr. Justice Cardozo's often quoted observation is apt: "We must know what the decision means before the duty becomes ours to say whether it is right or wrong." *United States v. Chicago, M., St. P. & P. R. Co.,* 294 *U. S.* 499, 511, 55 *S. Ct.* 462, 79 *L. Ed.* 1023, 1032 (1935).

And the Division of Tax Appeals is, of course, an administrative agency exercising *quasi*-judicial functions. Its actions are valid only when confined within its delegated powers. In railroad tax assessment cases its jurisdiction is not limited to the mere determination whether error was

made by the Director in fixing the original assessment. *R. S.* 54:29A–33 expressly provides that if it shall be made to appear to the Division upon the review that the assessment or tax is "illegal, excessive, insufficient or that there has been illegal discrimination in the assessment, the board shall correct, adjust and equalize such assessment or tax." The exercise of the powers thus conferred necessarily requires the Division to act as an assessor if the agency finds from the evidence that the Director's assessment is excessive or inadequate. The correction in either event means a reduction or an increase in accordance with the Division's determination on the evidence of the true value of the property. The Division may "correct" or "adjust" an assessment complained of as not being at true value only upon a determination supported by evidence that the assessment is "excessive" or "insufficient." Basic fact findings are thus essential, among other reasons, to help protect the parties against careless and arbitrary action and to enable the appellate court better to determine whether the Division has kept within its delegated jurisdiction. Basic fact findings contemplate "a recitation of the basic facts established by the evidence as found by the trier of the facts, from which may be inferred the ultimate facts in terms of the statutory criterion required as a basis for a particular order." 42 *Am. Jur., Public Administrative Law, sec.* 151, *p.* 500. They are embraced within the complete record which *Rules* 3:81–8, 9 and 13 clearly contemplate shall as far as practicable be provided by the agency for purposes of appellate review.

The State takes issue with the holding of the Appellate Division that the Division of Tax Appeals acts as the assessor in railroad tax cases with power independently to fix the assessment if it determines upon evidence that the assessment of the Director is excessive or insufficient. We have stated our agreement with the holding of the Appellate Division, but the State's argument requires an answer. The argument is premised upon an absence from the record of any testimony of the Director or members of his staff of the

evidential facts upon which the Director concluded that the true values of the properties for 1949 were in the reduced amounts. The State contends that the Division of Tax Appeals has no jurisdiction to disturb the Director's assessments of properties in railroad use except for "palpable error" and that without the Director's testimony or that of his staff the Division of Tax Appeals was bound to sustain the Director's assessments for lack of an evidentiary basis for a finding of "palpable error." The State insists that ever since 1886 our courts have followed the rule of sustaining original assessments of property in railroad use except upon a showing of "palpable error" in the making of the assessment, and this because of inclusion in one form or another in Railroad Tax Acts of a provision, in its present form now *N. J. S. A.* 54:29A–67, *L.* 1941, *c.* 291, *p.* 795, as amended *L.* 1948, *c.* 40, *p.* 123, that

"The commissioner, and any person delegated by him to value and assess property in railroad use, shall be entitled to use his personal knowledge and judgment as to the value of any property which he is required to assess, upon original assessment or upon review thereof."

In deciding *Central R. R. Co. of N. J. v. State Board of Assessors,* 49 *N. J. L.* 1 (*Sup. Ct.* 1886), under the Railroad Tax Act of 1884, *L.* 1884, *c.* 101, *p.* 142, where the "personal knowledge and judgment" provision first appeared, the former Supreme Court, speaking through Chief Justice Beasley, said:

"We do not consider that we have the right to alter or annul any of the proceedings of this body of officers, except for palpable error, for it is not to be overlooked that the statute in question expressly declares that these assessors 'shall be entitled to use their personal knowledge and judgment as to the value of the property,' a capacity with which this court is not endowed by the legislature."

This rule of practice was followed in later cases decided under *L.* 1886, *c.* 208, *p.* 277. *Long Dock Co. v. State Board of Assessors, supra,* reversing *Long Dock Co. v. Hendrickson,*

*supra; United New Jersey, &c., Co. v. State Board,* 100
*N. J. L.* 131 (*E. & A.* 1924) ; *United N. J. R. R., &c., Co.
v. State Board, &c.,* 103 *N. J. L.* 33 (*Sup. Ct.* 1926).

*Central R. R. Co. v. State Board* was also cited in *State
v. State Board of Tax Appeals,* 134 *N. J. L.* 34 (*Sup. Ct.*
1946), affirmed 135 *N. J. L.* 481, 482 (*E. & A.* 1947), and
in *Pilney, Trustee, &c., v. State Board of Tax Appeals,* 136
*N. J. L.* 157 (*Sup. Ct.* 1947), decided since the enactment
of the Railroad Tax Act of 1941, *supra,* but the principle of
that case was not the ground of either decision. Both con-
cerned assessments upon the property of Central Railroad.
In the case in 134 *N. J. L.* the court upon an independent
analysis of the differing theories of assessment utilized by
the State Tax Commissioner and the State Board of Tax
Appeals held that the Commissioner's theories were the
better founded. In the 136 *N. J. L.* case the court refused
independently to review the propriety of assessments for
1942 and 1943 made by the Commissioner and sustained
by the State Board in the absence of a showing of a change
of value from that sustained for 1941 in the earlier decision.

The short answer to the State's contention is that the
principle of the *Central R. R.* case was applied only in the
former Supreme Court as a limitation upon the scope of
review in that court of assessments under statutes which
combined the functions both of original assessment and
administrative review in the same body (originally the State
Board of Assessors and then the State Board of Taxes· and
Assessments, *L.* 1915, *c.* 244, *p.* 438) and delegated to that
body the power in both capacities to "use their personal
knowledge and judgment as to the value of property" upon
original assessment and upon "review" thereof when its duty
was to "correct the same as shall appear just." *L.* 1884,
*c.* 101, *pp.* 150 and 154; *L.* 1888, *c.* 208, *p.* 277, 280. In
the very nature of things such bodies could not have been
and were not under any limitation upon review not to dis-
turb their own original assessments except for palpable
error.

■ There is nothing whatever in the existing statute to suggest such a limitation upon the powers of the Division of Tax Appeals. True, reference to the use of personal knowledge and judgment now appears only in the definition of the Director's powers and that of persons delegated by him to value and assess property in railroad use, *L.* 1941, *c.* 291, *p.* 795, as amended by *L.* 1948, *c.* 40, *p.* 123, *N. J. S. A.* 54:29A–67, but plainly it does not follow from this that thereby the Legislature intended that the Division of Tax Appeals was not to disturb the Director's assessments except for palpable error. To the contrary, the Legislature has explicitly provided, *N. J. S. A.* 54:29A–33, that the Division of Tax Appeals "shall correct, adjust * * *" "such assessment" by the Director "If it shall be made to appear" after hearing upon complaint and notice, *N. J. S. A.* 54:29A–31 and 32, from evidence, that "any such assessment" is "excessive" or "insufficient," the Division's "findings of fact and its decision in each case" in that regard to be reduced to "writing," *R. S.* 54:2–16. The Division·is thus clothed with power independently to make an assessment when from evidence it appears that the Director has made an improper one.

■ Because the Director is authorized to use personal knowledge in arriving at his assessment, his testimony and that of his staff is compellable, limited, however, to testimony of the "evidential facts" upon which his judgment of valuation rests and not embracing the "operations of his mind" or the "mental processes" by which he made his inferences from such facts and arrived at the assessment. *Long Dock Co. v. State Board of Assessors, supra.* But such testimony is not a prerequisite to the determination of the case by the Division of Tax Appeals. The knowledge of evidential facts possessed by the Director and his staff "differs in no essential respect from the knowledge of" the expert witnesses testifying for the parties. "It may prove more or less valuable when subjected to the same tests." In any event "there was no presumption in the mind of the legislature that" the

Director and his staff "would know more than the experts" and the Division of Tax Appeals and the courts "ought not to assume such to be the fact without proof." *Long Dock Co. v. State Board of Assessors, supra.*

The testimony was not made part of the record in the instant cases. *N. J. S. A.* 54:29A–33 provides that the "Attorney General shall appear on behalf of the State" in these cases. A deputy attorney-general was in attendance at the opening hearing but announced that the State would not take an active part in the proceedings. He announced further, however, that the Director and his staff were available to testify at the request of any party or of the panel. The testimony was not requested. We see no reason why upon the remand that that testimony and any other relevant evidence should not be added to the record if any party, including the State, or the Division, desires it.

The State advances another argument, in which it is joined by the railroad, in support of the position that the Director's assessments should be sustained. It is contended that it appears that in 1943 the Hudson County Board of Taxation substantially reduced assessments, allegedly below true values, upon locally assessed lands in Jersey City and Hoboken. The accuracy of the factual premise is vigorously contested by the cities in their briefs, but upon the assumption that such occurred we are asked to assume that the Director's reductions reflect his effort to comply with a supposed mandate upon him stemming from *Article VIII, Section 1, paragraph 1* of the *Constitution of* 1947 to apply the same standard of value in the assessment of properties in railroad use as is applied by the local assessors in the assessment of property taxed locally. The cited constitutional provision provides in pertinent part that "all real property assessed and taxed locally or by the state for allotment and payment to taxing districts shall be assessed according to the same standard of value." The State's answering brief states:

"The Commissioner (Director) was obligated to comply with the new Constitution in making this his first complete assessment for

Lackawanna under the provisions of the implementing Railroad Tax Law of 1948. If, in his opinion, a higher assessment would have been discriminatory, it was his duty to revise the assessments downward. Because no one saw fit to call him as a witness, it may not now be said that the Commissioner (Director) was not thoroughly justified in making such downward revision."

The argument is wholly without merit. The constitutional restraint is upon the Legislature when enacting statutes for the assessment of the two classes of property. The Legislature has enacted the same standard of value for both. Tax receipts derived from the assessment of Class II property in railroad use are allotted to and paid over to the local taxing districts in which such property is situated, each taxing district receiving the total amount of tax derived from the assessment of such property situated within the district. *N. J. S. A.* 54:29A-24. The standard of assessment of such property prescribed by *N. J. S. A.* 54:29A-17 to be employed by the Director is "true value." This is the identical standard prescribed for the assessment of locally assessed lands by local assessors. *R. S.* 54:4-1. Neither the Director nor the local assessor has any authority but to make the respective assessments at true value in compliance with the statutory provision applicable to him.

Relief from assessments upon Class II property in railroad use allegedly discriminatory in relation to assessments upon locally assessed land is provided under *N. J. S. A.* 54:29A-33. Not the Director as a matter of original assessment, but the Division of Tax Appeals. upon complaint charging such discrimination and proof from which it is made to appear "that there has been illegal discrimination in the assessment," has jurisdiction to "correct, adjust and equalize such assessment." The question was not before the Division of Tax Appeals in the instant cases, nor is it before us. The State and the railroad concede that discrimination was neither charged nor attempted to be proved. The sole issue controverted in the record is whether the assessments made by the Director were excessive or insufficient. And

see *City of Newark v. West Milford Tp., Passaic County, supra.*

One other question requires our consideration. It is argued by the railroad that the Division of Tax Appeals erroneously admitted certain exhibits offered by the cities. The argument in the briefs seems to be addressed only to Exhibit JC–6 entitled "Trend of Pier Rentals in Hoboken, N. J." This schedule summarized the results of an inquiry by William C. Stewart, who qualified as an expert witness for the cities, as to pier rentals along the Jersey City and Hoboken waterfronts. Stewart obtained the data from the lessors or lessees and in some cases examined leases themselves. He testified that "an analysis of the rents" as shown on schedule JC–6 indicated an upward trend of rental values for pier properties devoted to steamship terminal use and stated that in his opinion a like upward trend was inferable for the values of the railroad terminal area. Exhibit JC–6 was offered while he was testifying and was admitted over the railroad's objection that it was hearsay.

The railroad's brief insists that Exhibit JC–6 was received "as proof of the facts therein contained." The record does not bear out this contention. The presiding panel member stated that it was admitted to show "what this expert considered" and not "necessarily [as] proof of the facts contained in the schedule itself." The exhibit was thus admitted in evidence not testimonially to prove the rentals for waterfront properties, but circumstantially in explanation of the process by which the witness arrived at his opinion of value of the railroad's property. Since admitted for this limited purpose the hearsay rule was not a barrier. *Wigmore on Evidence* (3rd ed.), *sec.* 1788; see also *sec.* 719; and see *Vigliotti v. Campano*, 104 *Conn.* 464, 133 *A.* 579 (*Sup. Ct. Err.* 1926); *Mayor of Baltimore v. Hurlock*, 113 *Md.* 674, 78 *A.* 558 (*Ct. App.* 1910); *Shaw v. Keown & McEvoy, Inc.*, 243 *Mass.* 221, 137 *N. E.* 258, 259 (*Sup. Jud. Ct.* 1922); *United States v. 25.406 Acres of Land*, 172 *F.* 2d 990 (*C. C. A.* 4, 1949), *certiorari* denied

*337 U. S. 931, 69 S. Ct.* 1496, *93 L. Ed.* 1738 (1949); 32 *C. J. S., Evidence,* § 545, *p.* 293 *et seq.;* cf. *R. S.* 2:101–1, now superseded by *N. J. S.* 2A:83–1. *Essex County Park Com'n v. Brokaw,* 107 *N. J. L.* 110 (*E. & A.* 1930), relied upon by the railroad, is not contrary. That case did not concern the admissibility of evidence used circumstantially by a qualified expert witness to explain the basis of his opinion. The question there was whether the trial court was correct in ruling that certain witnesses were unqualified to testify as real estate experts when the evidence of their qualifications was not as to their personal and actual partici-' pation in or personal knowledge of sales of comparable property but as to the results of examinations by. them of records of sales.

Reversed, with direction to remand to the Division of Tax Appeals for further proceedings consistent with this opinion.

OLIPHANT, J., concurring in result.

*For reversal and remandment*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN—5.

*For affirmance*—None.