83 N.J. Super. 205 (1964)
199 A.2d 244
ABELSONS, INC., PETITIONER-RESPONDENT,
v.
CITY OF NEWARK, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 5, 1964.
Decided April 3, 1964.
*206 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Saul A. Wolfe, Assistant Corporation Counsel, for appellant (Mr. Norman N. Schiff, Corporation Counsel, attorney).
Mr. Lawrence L. Lasser for respondent Abelsons, Inc. (Messrs. Lasser & Lasser, attorneys).
Mr. Alan B. Handler, Deputy Attorney General, filed a statement in lieu of brief for respondent Division of Tax Appeals (Mr. Arthur J. Sills, Attorney General, attorney).
*207 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This matter was remanded to the Division of Tax Appeals for an explanation in the light of the record of its use of a $40,000 rental figure, a flat 10% deduction for expenses and vacancies, and 12% (for land) and 15% (for improvements) capitalization rates. The Division could call upon the parties for additional testimony. It was to file its amended and supplemental findings and determination within 30 days.
The Division invited the parties to submit further testimony. They declined the opportunity; the hearing commissioner asserts that he "saw no necessity to require such testimony." He thereupon proceeded to file his supplemental findings and opinion.
The commissioner first states that the ultimate finding of fact in all tax appeals is, of course, the fair market value of the property on the assessment date, and the function of the Division is "by the exercise of an informed judgment to state a conclusion which is not capable of exact determination." This much may be granted. He then outlines his many years of experience in the field of tax assessment, first as a county tax board member and then as a Division commissioner, supplemented by university courses in the techniques of appraisal. The extent of this background, he says, "makes it difficult, if not impossible, to assign reasons" for conclusions like the one that operating expenses of a commercial property should, under proper management, approximate 10% of gross income. Such experience as the commissioner has had "cannot be fragmented for any purpose, even to serve as the support for conclusions which are ultimately a simple exercise of judgment, presumably informed." This leads to the assertion, "Nor can all the influences upon the judgment of the arbiter [commissioner] be limited to the facts in the record and specified for the appellate court."
The supplemental determination then refers to the fact that the commissioner had heard all tax appeals for properties in the heart of Newark for the assessment years 1956-1962, and *208 for many of the properties in the block where Abelsons is located for the years 1956-1959. His knowledge of values, he says, derives from personal inspection and testimony adduced in other cases  a factor which can be of "major importance" in the comparison of rents and operating expenses in a blockfront of essentially competing buildings. Recognizing that this court has only recently in the unreported case of Frank G. Shattuck Co. v. Newark (Docket A-547-62) restated the requirement that material influencing the Division's judgment, and not directly in the record, should be specified so that counsel may refute it, the commissioner observes that although this can be done in a simple case, "in the great majority of cases, the Division member is not even conscious of the relevant material until long after the hearing; he considers the records of the appeals on all closely comparable properties at once so as to decide them."
Since no sales of comparable property were cited to him, the commissioner found that the only meaningful approach to value was the economic. As in his original determination, he fixed the fair rental of the property at $40,000 by comparing it to the business property adjoining on the south. The reasons for this were set out in his original opinion. The parties could therefore, on the remand, have addressed themselves to that conclusion. They did not. We find the $40,000 figure a fair rental.
The commissioner then proceeded to "stabilize" the deduction for operating expenses and vacancies at 10%, based on "the testimony in this case, in the other cases, the experience of the Division, and in the interest of uniform treatment." The record initially made in this case does not support the 10% figure. What the testimony in other cases, or the experience of the Division, might be is not made known, either to us or the parties.
The 12% capitalization rate used by the Division is broken down into a 6.5% return and 5.5% for taxes. The commissioner, referring to the "instability of values in this area," adjusted the usual 6% return to 6.5%. And although the *209 1961 tax rate (at the 50% common ratio) was 5.055%, he adjusted this figure to 5.5% "because of the persistent upward trend" in the Newark tax rate. The difference of .445%, said the commissioner, "can be viewed with alarm only by those who mistakenly accept the capitalization of net income as an exact science." But see City of New Brunswick v. State, Division of Tax Appeals, 39 N.J. 537, 544 et seq. (1963).
The capitalization rate used for improvements was 15%. The supplemental determination breaks down this figure for the first time. One component was 5.5% for taxes. Rejecting straightline depreciation as unfair to the taxing authority, the commissioner computed depreciation on the sinking fund theory, premised on the building's present value in a lump sum at the end of its useful life, here assumed to be 35 years, so that the sinking fund annual requirement was fixed at 1.5% at a 3.5% return. Thus, the commissioner used 1.5% for depreciation, 8% for return on investment and, with the 5.5% tax figure, produced the 15% rate.
Most of the factors and the rationale used by the commissioner to reach his $275,000 value were not disclosed to the parties before the original or the supplemental findings and opinion were filed. What has been done here is clearly arbitrary and illegal. The Division insists that it may, and does, consider matters outside the record, without specifying them for the record so that the parties may have the opportunity to refute them before a determination is reached.
Evidence outside the record may, of course, be considered, but an administrative agency may not rest its ultimate determination upon evidence undisclosed to the parties. Fundamental fairness demands that they have an opportunity to test its trustworthiness and to explain or rebut it. Elizabeth Federal S. & L. Ass'n v. Howell, 24 N.J. 488, 507 (1957); Mazza v. Cavicchia, 15 N.J. 498, 516 (1954); In re Kresge-Newark, Inc., 30 N.J. Super. 489, 496 (App. Div. 1954).
This court only recently had occasion to observe in the Shattuck case, that it is of the essence of the legality of the administrative judicial process that the ultimate conclusion *210 of the agency be rationally founded upon express findings of fact supported, ordinarily, by evidence adduced before the agency. This rule is, of course, applicable to the Division of Tax Appeals, Delaware, L. & W.R. Co. v. City of Hoboken, 10 N.J. 418, 424-427 (1952). The agency may, and has full latitude to avail itself of the general information and expert knowledge it obtains in the performance of its day-to-day administrative activities. However, if it desires to utilize any of this background in the adjudication process, it must do so "[b]y taking appropriate official notice, making it a part of the hearing record, and affording fair opportunity of refutation" to the parties before it arrives at a determination. Pennsylvania Railroad Co. v. Dept. of Public Utilities, 14 N.J. 411, 427 (1954). Nothing less will suffice.
To the extent that facts and matters of special knowledge influenced his determination, the commissioner, at some point before the termination of the hearing and decision of the case (and, on remand, before filing his supplemental findings and opinion), should have noted for the record his proposed utilization of information garnered from his wide experience, other appeals, and sources outside the record. Propositions not advanced by any expert testimony and not matters of such common knowledge as to be self-proving to an appellate court by their assertion in an administrative decision, require that the authoritative basis, if any, for such assertions should be specified for the record. The obvious reason for this is to refute them before the agency and, further, so that the appellate court might appraise their merit and evidential weight.
The matter must therefore again be remanded to the Division. The commissioner will state for the record all the facts and factors on which he relied in reaching his decision, adding thereto the supporting bases therefor. He will give the parties full opportunity to refute them by proof and argument. The commissioner will then render new and complete findings and a new determination, in place of those heretofore made. We do not retain jurisdiction.