STATE BOARD OF TAX APPEALS.

1938 Case

HACKENSACK WATER COMPANY, PETITIONER, v. BOR-
OUGH OF HAWORTH, RESPONDENT.

1939 Case

BOROUGH OF HAWORTH, PETITIONER, v. HACKENSACK
WATER COMPANY, RESPONDENT.

Decided February 4, 1941.

For the Hackensack Water Company, *Morrison, Lloyd &
Morrison* (by *William J. Morrison*) and *Milton, McNulty
& Augelli* (by *John Milton* and *Joseph Keane*).

For the borough of Haworth, *Hennessy & Mowry* (by
*Frank H. Hennessy*).

QUINN, President. These appeals bring up the assessments
levied by the taxing district of the borough of Haworth, for

the years 1938 and 1939, on that portion of the Oradell Reservoir of the Hackensack Water Company which is situated in Haworth. The 1938 assessment was fixed at $300,000 for land, and was affirmed by the Bergen County Board of Taxation. The company's petition before this board seeks a reduction to a valuation of $125,686. For the year 1939, the land assessment was set at $395,000, and an assessment was entered for improvements at $5,000. Upon appeal, the county board reduced the land valuation to the sum of $250,000. The improvement assessment was not disturbed, and is not in issue in these proceedings. The borough seeks to restore the land assessment for 1939 to the valuation originally fixed for that year. The water company bears the burden of proof in the 1938 appeal, the taxing district that in the 1939 appeal.

The presumption of correctness which ordinarily attaches to judgments of county boards of taxation, upon review of local assessments, appears to conflict with the inconsistent results arrived at by the board in these cases, it being conceded by both of the parties that the condition and value of the property were the same for the two years under appeal. We shall therefore attempt to determine the true value of the property for ourselves, based upon the proof here adduced, our knowledge of the property gleaned in the appeal of the 1937 assessment in Haworth, and past appeals of other taxing districts in which parts of the reservoir are situated.

The only witness in these cases for the water company was Mr. Emile J. Fricker. He is, and has been for some time past, an executive officer of the company. He testified that the property in question consisted of 243 acres of land, most of which was under water. This area is an integral part of a reservoir situated in several taxing districts, approximating 655 acres in size, and created partly through excavation and partly through impounding by a large dam erected in Oradell. The reservoir stores water to supply the needs of the water company's consumers, when the flow of the primary source, the Hackensack river, falls below normal. As noted above, the acreage in Haworth is approximately one-third the total area of the reservoir under water. Mr. Fricker testified to a

valuation of $134,000 for the land under appeal, basing his estimate on sales prices of other impounded reservoir lands purchased by him for the water company, and stating that he took into consideration the use which the company was making of the property, and that it was part of a going concern.

While we have high regard for Mr. Fricker's practical qualifications for the valuation of property such as that under appeal, we must conclude that his estimate is extremely conservative. We regard the situation before us as one in which evidence of reproduction cost of the property would have more than its usual low probative weight, since the seller or purchaser of a successful and going water supply property, in a unique location, would necessarily place considerable reliance, in arriving at a fair sales price therefor, upon the cost of acquiring the land in its virgin state, and of fitting it for use as a water reservoir. Experts for the borough in this and other appeals have testified, and the company has not controverted the fact, that practically all, if not the entirety, of the flooded area of the reservoir, was dredged or excavated to increase the normal impounding capacity of the lands. What the cost of this operation upon the Haworth property was, does not appear, but a reasonable estimate could probably be more accurately made by Mr. Fricker than by any other person. The information is not given by Mr. Fricker, however, but only a final valuation for the land exceeding by only $9,000 an estimate made by a real estate expert offered by the water company in the 1937 appeal, for the value of the land as swamp land, without regard to its use as a water property. And the company concedes in its brief that the condition of the property has not changed within the past decade. A reputable witness for the borough in the present case gives a value of $140,000 for this property, considered apart from its character and use as reservoir land. We cannot help but conclude that Mr. Fricker's estimate has reflected little or none of the special value attaching to this property because of the use to which it is put (*Trustees of Stevens Institute* v. *State Board* (*Supreme Court*, 1928), 105 *N. J. L.* 99; 143 *Atl. Rep.* 356; *affirmed*, 105 *N. J. L.*

655; 146 *Atl. Rep.* 919), or of the reasonable cost, depreciated, of fitting the land for the use to which it was put upon the assessing dates. *Emerson* v. *State Board of Tax Appeals (Supreme Court,* 1928), 6 *N. J. Mis. R.* 326; 141 *Atl. Rep.* 23; *Hackensack Water Co.* v. *Borough of Haworth, New Jersey Tax Reports,* 1934-1939, *p.* 604. We do not mean to imply that replacement cost of this water reservoir property is controlling as to its taxable true value, but merely to indicate that that factor was given no attention by the taxpayer upon the hearing of these appeals.

On the other hand, we do not regard the proof adduced by the taxing district as sufficient to sustain its burden of proof in attacking the valuation fixed by the county board, for the year 1939, in the sum of $250,000. *Newton Trust Co.* v. *Atwood (Supreme Court,* 1908), 77 *N. J. L.* 141; 71 *Atl. Rep.* 110.

After offering a general real estate expert who testified, as noted above, to a valuation of $140,000 for the land, were it ordinary, non-reservoir property, the borough produced a valuation engineer specializing in water utilities. We were impressed by the background of this witness, but not with his familiarity with the property under appeal, nor with certain assumptions as to the property, underlying his calculations and conclusions as to value. This witness arrived at an estimate of $583,625 as the cost of adapting the Haworth lands to the purposes for which they are used, which, added to the other valuation of the property as ordinary land, of $140,554, was considered to result in a total fair value of $724,174. The witness further estimated that the operation of the reservoir as an entirety made it possible for the company to serve an additional population of such size as to yield an additional income to the company, which, capitalized at six per cent., would reflect a value apportionable to the Haworth property, of $1,500,000. This, however, was based upon gross, not net income. It is therefore not a fair approach to the issue. Nor is there any indication of how the total was apportioned to Haworth.

The estimate of replacement cost by the borough's witness was based entirely upon an assumption of the truth of certain

facts as to the extent and depth of the excavation upon the property, found by the witness in an article describing the reservoir, by a former president of the water company. These essential factors were not proven by direct testimony, and we are not at liberty, under the proofs in this case, to accept them as facts. And, although the witness based his valuation additionally upon general physical inspection of the reservoir, he was at the property upon only three ocsasions, for several hours each time. We are unable to place very great weight upon his estimates of cost, therefore, since he was not possessed of close first-hand knowledge of the *quantity* of dredging or excavating done upon the land, nor were his calculations connected by the borough with competent proof of such quantities.

In its argument, the borough lays great stress upon the book value of the Oradell reservoir as an entirety, as shown by the company's reports to the Public Utility Commission and to the Securities and Exchange Commission. These show roughly, a figure of $2,670,000, of which $2,370,000 represented the cost of fitting the land for use as a reservoir, and of the erection of the Oradell dam and other structures. Although it was admitted by the company that these figures represented book value for all purposes, not peculiarly for rate-making purposes, thereby obviating the applicability of court decisions rejecting rate-making valuations in a tax valuation case (*Woodcliff Lake* v. *State Board* (*Supreme Court,* 1936), 14 *N. J. Mis. R.* 132; 182 *Atl. Rep.* 866; *Hackensack Water Co.* v. *State Board* (*Supreme Court,* 1939), 122 *N. J. L.* 596; 7 *Atl. Rep.* (*2d*) 628), nevertheless the borough fails to demonstrate that any particular part of the total book figure is appropriately apportionable to the Haworth land. The total includes the cost of the dam, all of which is situated in the borough of Oradell. This dam, with its accompanying structures, which are assessable as improvements (*Hackensack Water Co.* v. *Borough of Woodcliff Lake, New Jersey Tax Reports,* 1934-1939, *p.* 145), have been *alone* assessed for taxation by the borough of Oradell at a valuation in excess of $2,000,000. It is thus apparent that introduction of the book value of the whole reservoir

has not been made probative of the true value of that portion thereof consisting of the land situated in Haworth.

In the 1937 case, we held that an assessment of $250,000 for the land was not excessive. From the proof herein, and our knowledge and inspection of this property in the past, we conclude that its true value was $250,000 for the years 1938 and 1939. The county board judgment for 1938 will therefore be modified so as to reduce the assessment of the land to $250,000, while the 1939 judgment will be affirmed in the same amount. The $5,000 assessment for improvements for 1939 will remain.

Judgments accordingly.