87 N.J. Super. 65 (1965)
208 A.2d 153
SAMUEL HIRD & SONS, INCORPORATED, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CITY OF GARFIELD AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
CITY OF GARFIELD IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
AARON LEVINE AND DIVISION OF TAX APPEALS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1965.
Decided March 11, 1965.
*67 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Robert S. Krause argued the cause for plaintiff-appellant Samuel Hird & Sons, Inc. (Mr. S. Eugene Lindstamer, attorney).
Mr. Ralph W. Chandless argued the cause for defendant-respondent and plaintiff-appellant City of Garfield (Messrs. Chandless, Weller & Kramer, attorneys).
No appearance for defendant-respondent Aaron Levine.
*68 Mr. Arthur J. Sills, Attorney General of New Jersey, filed statement in lieu of brief for respondent Division of Tax Appeals in Docket A-587-63 (Mr. Alan B. Handler, First Assistant Attorney General, of counsel).
Mr. Elias Abelson, Deputy Attorney General, argued the cause for respondent Division of Tax Appeals in Docket A-532-63 (Mr. Arthus J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These are two appeals, argued together, from judgments of the Division of Tax Appeals resulting from a joint hearing of two separate tax appeals concerning assessments of the same property, one for the tax year 1961 (our Docket A-587-63) and the other for the tax year 1962 (our Docket A-532-63).
For the year 1961, as of the assessing date October 1, 1960, the real estate in question was assessed by the Garfield assessor as follows: land, $33,225; improvements, $179,550; total, $212,775. On appeal the Bergen County Board of Taxation reduced the assessments to land, $21,168; improvements, $138,800; total, $159,968.
For the year 1962, as of the assessing date of October 1, 1961, the property was assessed as follows: land, $21,175; improvements, $138,000; total, $159,175. On appeal the county board reduced the assessments to land, $19,600; improvements, $78,000; total $97,600.
The owner of the property as of the date of the 1961 assessment appealed the county board judgment to the Division of Tax Appeals, claiming that a further reduction was justified on the basis of the true value of the property. The taxing district appealed the county board judgment for the 1962 assessment on the ground that the reduction in assessment was unjustified. The appeals were heard together by the Division. Both sides offered testimony which it was understood was to be applicable to the appeals for both years. It was conceded *69 by the parties that the property had the same true value as of both assessing dates applicable, and there was no evidence to the contrary. The commissioner who heard and decided the appeals for the Division of Tax Appeals concluded that "neither side in this case has presented any persuasive proof of the true value of the subject property." Since neither side had "borne its burden of proof," both appeals were "dismissed" and the county board judgments were affirmed. It thus resulted that at the conclusion of two administrative appeals covering assessments for each of two successive tax years the final assessments for the same property, which was of the same true value in both years, were $159,968 in one year (1961) and $97,600 the next year (1962). For reasons to be stated, we hold that the condition of the evidence before the Division did not require this anomalous result and that the Division should fix the proper identical assessments for the property for both of the tax years involved.
The property in question is a 3.92-acre tract which is the site of a number of industrial buildings, originally built years ago as textile mills but converted to other uses more recently because of the economic demise of the textile industry in the Passaic-Bergen County area.
The taxpayer's case before the Division was presented principally through the testimony of a real estate appraiser, George Goldstein, M.A.I. A written 17-page appraisal by this expert was marked in evidence. It contains supporting details of his valuations not in all respects specifically repeated in the oral testimony. He valued the property at the same true value for each of the tax years in question. The 3.92 acres were valued at $20,000 per acre, or $78,400. The 14 buildings were appraised on the basis of reproduction cost new less physical depreciation, in varying percentages, and a general deduction from the remainder of 50% to reflect economic and functional obsolescence. The resulting gross total values of $351,510 were checked by the witness on the basis of an analysis of sales of comparable mill properties in the general area. This analysis developed units of price of a square foot *70 of usable mill space by dividing total sales prices by gross square feet of floor space. From these price units the witness concluded that "purchasers * * * were buying in the market typical industrial properties of the typical mill type buildings erected around the turn of the century, and that's about a $2.25 to $2.40 market in Bergen and Passaic Counties." The summation method of appraisal by the witness (land plus buildings, appraised separately), mentioned above, came out to about $2.26 per square foot of floor space in the properties.
Goldstein found further confirmation of his appraisal in a sale of the subject property by its original owner, Samuel Hird & Sons, Incorporated, who had conducted a textile manufacturing business thereon for years, to Aaron Levine (through a dummy intervening grantee) on May 15, 1962. The sale price was $500,000, but the transaction included two parcels of land in addition to the 3.92 acres under appeal in these cases. The witness stated that after deducting the value of the two other properties, the gross sale price reflected a price for the subject property of $390,000. The discrepancy thereof from his appraisal of $351,510 was reconciled by the concept that the seller would add 10% to the appraised value for commission when placing the property on the market for sale.
The average sales (assessment) ratio of Garfield for 1961 being 25.37%, the taxpayer contends that, applying the Goldstein appraisal, the proper equalized assessment for 1961 should approximate $89,000; and at the 1962 average sales ratio of 21.25% should be correspondingly less.
The circumstances surrounding the Hird-Levine sale of the property were explored rather fully through proofs of persons associated therewith. They need not be discussed here. It will suffice to say that if they reflected a transaction in which the seller was under greater economic compulsion to sell than the ideal hypothetical "willing seller" (as to which we express no opinion) any such factor could readily have been given suitable qualifying weight without affecting the substantial probative utility of the sale as a valuation factor *71 in this case. Cf. Moorestown Tp. v. Slack, 85 N.J. Super. 109, 114-115 (App. Div. 1964), certification denied, 43 N.J. 452 (1964).
The taxing district relied upon the testimony of a purported valuation expert whose qualifications and valuation conclusions were found by the commissioner hearing the case in the Division of Tax Appeals to be unsatisfactory. We are in agreement with the Division in this respect, except as to the expert's land appraisal, which was the same as that of the taxpayer's expert. However, some probative weight, or potential probative utility to an evaluator of the property, was to be found in the citation by this witness of comparable sales data indicating higher building-square-foot unit sales prices than the sales Goldstein relied upon; and in figures concerning rental income from the property after the sale to Levine. The witness used the same approach of building-square-foot price units in analyzing sales of comparable mill properties as did Goldstein. However, he disregarded the Hird-Levine sale of the subject property as being a "forced sale" and for an insufficient price.
In dismissing the taxpayer's 1961 appeal the opinion of the Division of Tax Appeals recites that the proof on its behalf "is not clear and convincing but rather is vague and unsatisfactory." The analysis of value by the taxpayer's expert on the basis of reproduction cost less depreciation and obsolescence is criticized on the ground that there is no "stated basis" for reproduction costs or for percentage of physical depreciation; nor "a word of testimony" to support the deductions for economic and functional obsolescence. We have read the testimony and examined the informative written exhibit submitted by this expert, and we are constrained to disagree with the Division on each of the foregoing points. The prima facie basis for each conclusion is given by the expert, and it is particularly persuasive with relation to economic and functional obsolescence, these buildings having been erected many years ago as special use structures for an industry no longer viable in northern New Jersey, and now *72 converted and subdivided for miscellaneous commercial uses. The exhibit contains explicit physical descriptions and measurements of the buildings. If the taxing district or the commissioner presiding at the hearing questioned the reasons for the particular percentages of depreciation or obsolescence allowed by the witness, or the different units of reproduction cost new used by him for the various buildings, he could have been interrogated for further details or explanation, but his testimony cannot be totally discarded as not prima facie soundly based in principle.
The Division also attacks the taxpayer's expert's analysis of comparable sales on the basis of unit price of square foot of floor space sold. According to the opinion filed by the hearing commissioner, sales of comparable properties can properly be analyzed by an appraisal expert solely on either the land residual or building residual method. Again, we disagree.
There is no single doctrinaire approach to the methodology of the valuation of real property or any phase thereof. An expert may properly bring all his knowledge and experience to bear on the critical issue of the price for which, in his judgment, the subject property will sell between parties willing but not compelled to sell or buy, as the case may be. If, in the appraiser's experience, the general market for parcels of industrial property of the particular type and in the general area involved is characteristically expressed in terms of price per square foot of usable floor space (reasonable variations in plot size not being greatly material), we see no rational basis for rejecting as groundless the use by the witness as one of his approaches to the valuation of the subject property what he has learned as to how much similar properties are selling for on such a building-square-foot price basis. In this field, as stated in City of New Brunswick v. State of N.J. Div. of Tax Appeals, 39 N.J. 537, 544 (1963), "There can be no rigid rule. The answer depends upon the particular facts and the reaction to them of experts steeped in the history and hopes of the area." The experience and qualifications of this particular expert in the appraisal of all kinds *73 of commercial and industrial properties in the North Jersey area is impressive, being found not only in his exhibit in this case admitted in evidence but in the records of many valuation litigations in our court files of which we can take notice.
Finally, the citation by the taxpayer's witness of the 1962 sale of the very property under appeal (plus other property) constituted significant probative material for the use of the factfinder. In using this sale for purposes of assistance in appraising the subject property the witness properly deducted from the sale price his apportioned valuation of the two additional parcels of land not under appeal but which were included in the $500,000 sale price. The resulting criticism in the opinion of the Division, based upon a supposed difference therein from the witness's method of analysis of other sales, is not warranted, as the additional parcels here sold were of excess land not constituting part of the assessed mill property under appeal. The witness explained how the remainder of the sale price, as allocated by him to the subject property under appeal, did approximate the results of his alternate other approaches  i.e., reproduction cost new depreciated and sales of comparable properties analyzed on a building-square-foot price unit.
We agree with the Division that the witness did not state the total land area in the sale or the basis for his valuation of the excess land. However, a question or two to the witness by the adverse party or the commissioner would undoubtedly have revealed the information. It is of interest, in this regard, that even if the entire $500,000 sale price were attributed to the subject property alone, the 1961 average sales ratio applied thereto would reflect an indicated assessment valuation of $127,000, as contrasted with the $159,968 fixed by the judgment under review.
We are not to be understood as suggesting that the ultimate valuation conclusions of the taxpayer's expert or all the steps in his approach thereto were so impregnable as necessarily to compel approval or adoption by the Division. That tribunal of course had the right and duty to apply its *74 own expert judgment to the valuation data submitted to it by the experts, in the light of all the evidence in the case. What we emphasize here is that there was enough substantial and competent evidence before the Division to have enabled it to ascertain and determine the true value of the property under appeal and to fix a common assessment for the property for both of the tax years in question, based upon a suitable equalization factor, rather than to reject all the proofs as worthless and leave the property assessed at the divergent figures of $159,968 for one year and $97,600 for the next, in the face of the conceded fact that the true value thereof was the same for both years.
As was held in a similar situation by the former State Board of Tax Appeals in Hackensack Water Co. v. Borough of Haworth, 19 N.J. Misc. 217, 218, 17 A.2d 827 (1941), where the state tax appeal tribunal is hearing jointly appeals of assessments for two successive tax years and there is unrefuted proof that the condition and value of the property is unchanged between the respective assessing dates, the ordinary presumption of correctness of county tax board judgments cannot attach to judgments which are grossly disparate for the tax years involved. In such case the state board should "attempt to determine the true value of the property for [itself], based upon the proof * * * adduced * * *." (at p. 218)
The presumption of correctness of the county board judgment for the year 1961 (see City of Passaic v. Botany Mills, Inc., 72 N.J. Super. 449 (App. Div. 1962), certification denied, 37 N.J. 231 (1962)), was dissipated here for the additional reason that the valuations set by the county board for that year were refuted by sufficient competent evidence to the contrary to evoke the exercise of the factfinding function of the Division of Tax Appeals. 72 N.J. Super., at p. 454. The so-called "presumption" had no artificial probative force once substantial evidence to the contrary was adduced. Meltzer v. Division of Tax Appeals, 134 N.J.L. 510, 512 (Sup. Ct. 1946); North Bergen Tp. v. Dieckmann's *75 Estate, 37 N.J. Super. 221 (App. Div. 1955). Once the presumption was met, as we hold was here the case, it became incumbent upon the Division to appraise the testimony, make a determination of true value, and fix the assessment thereat. Rek Investment Co. v. City of Newark, 80 N.J. Super. 552, 557 (App. Div. 1963). And in this regard it makes no difference whether such true value is above or below that fixed by the county board judgment under appeal. Id., at pp. 557-558; City of Hackensack v. Rubinstein, 37 N.J. 39, 52 (1962).
We have also to deal with the argument of the city in relation to its 1962 appeal, that the Division of Tax Appeals "was estopped from reducing the taxpayer's assessment below the 1961 assessment." Since we are remanding this matter to the Division with directions to arrive at a common assessment for both years, the contention is moot. It must be pointed out, however, that the mere fact that the Division has fixed a tax assessment for an earlier year at a given valuation, while evidential, does not compel a similar determination for a later year in another separate proceeding. The doctrine of res judicata does not apply. Delaware, L. & W.R.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 553 (App. Div. 1951), reversed on other grounds, 10 N.J. 418 (1952).
The city has moved to strike the brief filed by the Attorney General on behalf of the Division of Tax Appeals in answer to the city's appeal on the ground that neither the Attorney General nor the Division has a proper interest in the appellate phase of the matter in this court. The Attorney General's brief concerned itself, inter alia, with refutation of the res judicata argument of the city last above mentioned. This was a subject of general public importance in the administration of tax review procedure and appropriate to enlist the Attorney General's discretionary entry into the litigation before this court. Cf. Borough of Hasbrouck Heights v. Division of Tax Appeals, 48 N.J. Super. 328 (App. Div. 1958); *76 Kingsley v. Div. of Tax Appeals, 76 N.J. Super. 531 (App. Div. 1962). The motion is denied.
The appeals are remanded for further consideration and determination by the Division of a common judgment of assessment for both tax years. The Division or either side may recall any witness for further interrogation if it so deems necessary or submit additional proof. An identical equalization factor should be used for both tax years. See City of New Brunswick v. State of N.J. Div. of Tax Appeals, supra, 39 N.J., at pp. 541-542. No costs. We do not retain jurisdiction.