CITY OF NEWARK, PLAINTIFF, v. THE 1013 CORP., DEFENDANT.

Tax Court of New Jersey

April 2, 1980.

110

*Melvin Simon*, Assistant Corporation Counsel, for plaintiff.
*Mortimer Katz*, for defendant.

CRABTREE, J. T. C.

This is a local property tax case involving the value of a neighborhood store and office complex in the City of Newark for the tax year 1976. The Essex County Board of Taxation (county board) reduced the assessment from $121,500 to $101,-500, the reduction being attributed entirely to improvements. The city petitioned the Division of Tax Appeals (Division) for a restoration of the original assessment.

The subject property, located at 1013 South Orange Avenue, Newark, New Jersey, and known and designated as Block 4200, Lot 41, on the Newark Tax Map, is proximate to both South Orange and East Orange and consists of four stores on South Orange Avenue and a former neighborhood theatre converted to 12 offices and two stores along Telford Street. The improvements are about 50 years old and the area is of a mixed residential and commercial character.

Both parties offered expert testimony directed to the true value of the subject property. Both experts applied the economic approach to the determination of true value; they indicated that consideration had been given to reproduction costs and

market approaches but they concluded that the economic method was more suitable because income property was involved.

The overall capitalization rates selected by the experts did not differ materially one from another (although there were substantial divergences in the components). The capitalization rate recommended by plaintiff's expert of 20.44% (7.5% return on investment, 3.0% recapture, 9.94% actual tax rate) was more favorable to defendant than 18.94% recommended by defendant's expert (8.0% return, 1.0% recapture, 9.94% actual tax rate). The application of plaintiff's capitalization rate to imputed net income, however, produced a true value of $158,800 (substantially greater than the original assessment), while defendant's capitalization rate, when applied to imputed net income, resulted in a true value of $64,300. The difference is primarily attributable to the choice of a vacancy factor and the determination of a proper fuel expense level.

Both experts agreed upon gross annual income of $50,400 and they concurred on all the expenses except fuel. Plaintiff's expert postulated a 20% vacancy factor and disallowed approximately $3,400 of the claimed fuel expense as excessive, while defendant's expert found a 50% vacancy factor and made no adjustment to actual expenses. The adjustments of plaintiff's expert led to a finding of $30,428 imputed income; the imputed income of defendant's expert was $12,172.

Plaintiff's expert testified that her 20% vacancy factor was based upon vacancies in the neighboring properties, not past or projected vacancies of the subject property. She acknowledged that, at or about the applicable assessment date, eight of the 12 offices were vacant as well as one of the six stores. A vacancy factor is influenced by the estimated quality and durability of projected rentals and by typical vacancy levels revealed by market surveys of similar properties under similar conditions. *American Institute of Real Estate Appraisers, The Appraisal of Real Estate* 339 (7 ed. 1978). The record is devoid of any evidence that plaintiff's expert considered the quality and durability of rentals, nor does she attempt to show any similarity

between neighboring properties and the subject property. Moreover, she acknowledged that the actual vacancy factor of the subject property, based upon rental income, was 30%. I find her testimony regarding a 20% vacancy factor to be unconvincing.

■ The conclusion of plaintiff's expert concerning the fuel expenses is also unsupported by credible evidence. She estimated the appropriate fuel expense level at $3,000 summarily disallowing the balance of $3,400 as excessive. While she accepted all other expenses claimed by defendant, she admitted that she made no effort to verify the fuel bills. Although she indicated that she spoke with defendant's principal during the course of her inspection of the property in 1975, she conceded that she never discussed fuel expense with him. I find that her adjustment to fuel expense is unsupported by credible evidence.

■ The choice of defendant's expert of a 50% vacancy factor must be rejected for the following reasons:

1. It appears to be predicated upon the actual vacancies in the aggregate number of rental units, with no recognition of the difference in rentals between stores and offices.

2. He offered no justification for his vacancy factor in terms of the quality and durability of the rentals, and his attempt to support his conclusion with the vacancies in the neighboring properties did not withstand cross-examination.

3. The expenses represent 51.69% of his effective gross income, a level which I find, on general incremental cost principles, to be excessive.

Moreover, the testimony of defendant's expert on the recapture rate can only be described as mystifying. While he chose a low recapture rate of 1%, he testified that the remaining economic life of the improvements was 25 years.

■ In view of the foregoing I find that I must reject the ultimate conclusions as to true value offered by both experts and, on the basis of those portions of the testimony of both experts which I find credible, make an independent determination of the true value of the subject property. *Rek Investment Co. v. Newark*, 80 *N.J.Super.* 552, 194 *A.*2d 368 (App.Div.1963); *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 208 *A.*2d 153 (App.Div.1965). The determination of the weight to be

given the testimony of an expert witness is for the trier of fact, and that weight depends not only upon the candor, intelligence, knowledge and experience of the expert but also upon the facts and reasoning which form the foundation of the expert's opinion. *In re Port of New York Authority,* 28 *N.J.Super.* 575, 101 *A.2d* 365 (App.Div.1953); *Passaic v. Gera Mills,* 55 *N.J.Super.* 73, 150 *A.2d* 67 (App.Div.1959), certif. denied 30 *N.J.* 153, 152 *A.2d* 171 (1959).

While, as indicated above, I cannot accept the vacancy factor offered by either expert, I find that a 30% vacancy factor is appropriate. Plaintiff's expert testified that the actual vacancy rate at or about the assessing date was 30% based upon rental income. Moreover, a 30% vacancy factor produces a more realistic relationship between expenses and effective gross income.

Since plaintiff's expert failed to carry the burden of proof with respect to disallowance of a portion of the fuel expense, *Passaic v. Botany Mills, Inc.,* 72 *N.J.Super.* 449, 178 *A.2d* 657 (App.Div.1962), certif. denied 37 *N.J.* 231, 181 *A.2d* 13 (1962). I will accept all the claimed expenses with the exception of the management fee, which I find to be 5% of effective gross income.

The interest rate of defendant's expert of 8% is more consonant with the demands of the marketplace than the plaintiff's 7.5%, which is tied to risk-free time deposits of banks and savings institutions. Similarly, a recapture rate of 4% is a more accurate measure of the remaining useful economic life of 50-year-old improvements than the 3% rate recommended by plaintiff's expert.

Finally, plaintiff's expert accepted the assessment for land, and defendant's expert offered no justification, either in his written appraisal or in his testimony, for his allocation of land value. Since the County Board upheld the land assessment, defendant bore the burden of proof on that issue. *Passaic v. Botany Mills, Inc., supra.* Defendant having failed to carry that burden, I accept the plaintiff's original land assessment.

Accordingly, I find the true value of the subject property to be $111,496, allocated $67,800 to land and $43,696 to improvements. The true value was determined in accordance with the following analysis:

| | |
|---|---:|
| Economic rent | $ 50,400 |
| Less vacancy factor (collection loss was considered inconsequential by both experts) – 30% | 15,120 |
| Effective gross income | 35,280 |
| Less operating expenses (management fee calculated at 5% of effective gross income) | 13,530 |
| Net operating income | 21,750 |
| Deduct income to land ($67,800 × 17.94% [8% + 9.94%]) | 12,163 |
| Net income to improvements | 9,587 |
| $9,587 capitalized at 21.94% (8.0% + 4.0% + 9.94%) | 43,696 |
| Add value of land | 67,800 |
| Total True Value | $111,496 |

Judgment will be entered in accordance with this opinion.