KAHN, J.T.C.
This matter is a 1996 local property tax appeal. The property in question consists of land and improvements located along Route 17 in the Borough of Paramus, Bergen County, New Jersey, known as Block 5103, Lot 1. The land totals thirteen acres, of which approximately 2 .77 acres are described as wetlands and another .77 acres contain a utility easement. Situated on the land is a 155,615 square foot building constructed in 1973.
*486 The total assessment for 1996 is as follows:
Land $2,477,500
Improvements 7,137,500
Total $9,615,000
As of the relevant assessment date, October 1,1995, the subject was owned and occupied by Levitz Furniture Corp. (“taxpayer”), and utilized entirely as a furniture store. Taxpayer purchased the subject property from Paramustock, Inc. (R.H. Macy) in 1993. Prior to said sale, Macy’s apparently operated the property in the same fashion, and there were no significant changes to the property’s function subsequent to said sale. Neither party suggests that such sale is evidence of value in this case.
The land currently contains parking for 399 cars. The municipality’s zoning ordinance requires 513 parking spaces for the property to be fully utilized for retail. Accordingly, a variance is needed to increase parking.
The improvements consist of 64,855 square feet of warehouse space having an average ceiling height of 38 feet. The warehouse is unfinished and open, contains some lighting, and is heated with overhead space heaters. The warehouse is furnished with a non-realty racking storage system. The other portion of the property consists of 90,760 square feet, of which approximately 20,000 square feet is considered office space and the balance showroom space. This is divided equally between the first and second floors. The warehouse has five tailgate doors on its south wall, and six tailgate doors its on north wall. All customers must enter through the warehouse and proceed through double doors to the showroom/office because there is no direct entrance to the showroom. It is undisputed that customers view furniture in and around the warehouse as much as those in the showrooms. Taxpayer contends the improvements are of average quality and condition, whereas the municipality suggests that the improvements are of good quality and condition.
Taxpayer’s appraisal expert opines a value of $8,825,000 as of October 1,1995 based primarily on the use of the income capital *487 zation approach, corroborated by the market sales approach. The municipality’s appraisal witness opines a value of $17,445,000, based primarily on the income capitalization approach, corroborated by the cost approach.
Both parties contend the highest and best use of the subject property is as currently being utilized; however, only taxpayer’s expert witness qualified his opinion as to highest and best use. Taxpayer’s expert witness recommended converting 20,000 of the 23,000 square feet of office space to showroom at a $513,000 cost. According to the expert witness, this conversion is capital in nature and is deductible from his final estimate of value.
Both expert witnesses rely primarily on the income capitalization approach; however, each corroborated said approach with other valuation methods. This court finds that the only reliable evidence of value for the subject property derives from the income capitalization approach. Taxpayer’s appraisal expert’s market sales approach fails because the purported comparables are not comparable. A review of the photographs of the comparables, as well as the description offered by the appraiser, indicates little in the way of comparability. For example, the comparables’ building sizes range from 17,820 square feet to 54,000 square feet. The largest comparable is approximately one-third the size of the subject and the rest are considerably smaller. Taxpayer’s expert witness failed to explain the basis of his adjustment for the significant size differential between the comparables and the subject. Since taxpayer’s expert witness failed to submit any evidence to support his adjustments, this court finds said adjustments unreliable.
The municipality’s appraisal expert’s cost approach is likewise not reliable as either an independent source of value, or for the purposes of corroboration. The subject property is twenty years old and requires significant subjectivity in estimating depreciation and obsolescence. Even the municipality’s appraisal expert did not believe the cost to build the subject property would be a reliable method of valuation. Accordingly, this court rejects *488 both the taxpayer’s and municipality’s market sales and cost approaches to value.
Taxpayer’s appraisal expert witness appropriately commenced his income capitalization methodology by analyzing comparable properties to establish market rent attributable to the subject property. The expert witness first suggested retail comparables to evaluate the office/showroom area of the subject property, which he deemed retail in nature. Taxpayer’s witness then utilized the same method to provide an estimate of market rent for the warehouse space. After adjustments were made between the comparables and the subject, the appraisal expert concluded $12 per square foot market rent for the 90,760 square foot office/showroom (retail) area, and $4 per square foot for the 64,855 square foot warehouse area. From potential gross income (PGI) of $1,348,540, the expert witness deducted a 10% vacancy and collection loss factor resulting in effective gross income (EGI) of $1,213,686. The witness farther deducted various operating expenses including: management, 3% of EGI; structural reserves, 2% of EGI; commissions, 5% of EGI; professional fees, $5,000; and a total of $61,250[1] for owner’s cost to make improvements for tenants. This produced net operating income (NOI) of $1,026,067.
Taxpayer’s appraisal expert’s capitalization rate derives from specific publications and investment bulletins authored by the American Council of Life Insurance, from which he concluded an overall capitalization rate of 11%.[2] These publications present a range of various market indicators. Taxpayer’s expert witness selected a capitalization rate on the high side of the range. The witness justified the higher rate because of his opinion that Levitz’s purported financial difficulties pose a higher investment risk to an investor retaining Levitz as a tenant. This higher *489 investment risk requires a higher mortgage interest rate and a higher return on invested capital. The witness also categorized the subject as a mixed use property to which the appraisal indicators attribute a higher capitalization rate. Applying the capitalization rate to the expert witness’s conclusion as to net operating income, produces a value for the subject property of $9,327,882. Taxpayer’s appraisal expert, as aforesaid, deducted $513,000 as the cost of conversion of excess office space to showroom, which thereby creates a final value, as of October 1, 1995, in the amount of $8,814,882.
The municipality’s appraisal expert provided the court with an initial appraisal report and a supplemental appraisal report to rebut taxpayer’s analysis.[3] In accordance with his initial appraisal report, the municipality’s witness testified that the subject was not a mixed use property but a retail furniture store with excess warehouse space. The witness, therefore, opined that it was inappropriate appraisal methodology to separate the uses for individual valuation. According to the witness, the entire property, including the warehouse area, was utilized for sales activity. Customers enter the building through the warehouse and view furniture/furnishings displayed in the warehouse and showroom areas. According to the municipality’s expert, market rent for the subject’s warehouse area derived only from comparable warehouse rentals underestimates the value of said space. Moreover, the municipality’s appraisal expert described the relationship within the subject property as a synergy. Accordingly, the municipality’s expert contends that the most reliable appraisal method for the subject property is to establish market rent for the entire property improvement as retail, and then make adjustments for the excess warehouse area, and differences in construction and condition.
*490 The municipality’s expert witness utilized four comparable rentals that were between seventeen and thirty years in duration. The witness averaged the rentals over the entire term of each lease. With respect to each comparable, the municipality’s expert witness made the usual adjustments for time, location, condition, and typical physical attributes. Moreover, the witness adjusted each comparable downward by 20%, to reflect the aforementioned, excess warehouse area and physical differences. This analysis resulted in a $12 per square foot market rent for the entire building. The witness then deducted 5% for vacancy and collection loss based on his opinion that Paramus, especially the Route 17 corridor, possesses a strong commercial real estate market. He then deducted operating expenses totaling 12% of EGI, which included leasing commissions, management, and reserves for replacements. Such operating expenses were similar to the estimates recommended by taxpayer’s expert witness. Finally, the municipality’s analysis produced NOI of $1,876,620, significantly higher than the $1,026,067 recommended by taxpayer’s expert witness.
Relying on virtually the same publications as taxpayer’s expert witness, the municipality’s appraisal expert recommended an 8.95% capitalization rate. First, the municipality’s expert witness opined that the subject is not a mixed use property, and second, based on the aforesaid reasoning, that the investment is not a significant financial risk. .This capitalization applied to NOI ($1,876,720) produces a value of $17,445,000.
This court finds the municipality’s expert witness’s method of valuation is more reliable than taxpayer’s. Both expert witnesses determined that the use of the property as a single user furniture store, as of the relevant assessment date, is its highest and best use. There is no dispute that business is conducted throughout the entire building, including the warehouse entrance. In fact, furniture is displayed and sold throughout the warehouse and showroom. The majority of the entire building is utilized as a retail store, while some portion of the warehouse provides only storage.
*491 Taxpayer’s appraisal expert erroneously relies on Hull Junction Holding Corp. v. Princeton Bor. 16 N.J.Tax 68 (Tax 1996) as authority to value the warehouse area independently from the office/showroom area. The property in Hull Junction, is significantly different from the subject. That property consisted of numerous buildings, including office, retail, apartment, and indoor parking garage, as well as rights to build additional residential units. Each use produced income separate and apart from each other. The subject property, however, consists of one building utilized for one purpose — a furniture store which both experts viewed as its highest and best use. The municipality’s expert witness recognized the interrelationship of the subject’s two areas and how they were utilized for one purpose — the sale of furniture. Thus, the subject property’s warehouse area was not designed to compete with other warehouse space for separate income.
In Ford Motor Co. v. Edison Tp., 10 N.J.Tax 153 (Tax 1988), aff'd, 12 N.J.Tax 244 (App.Div.1990), aff'd, 127 N.J. 290, 604 A.2d 580 (1992), the Tax Court held that,
[t]he concept of highest and best use is not only fundamental to valuation but is a crucial determinant of market value. American Institute of Real Estate Appraisers, The Appraisal of Real Estate (9 ed.1987) at 41-42, 68, 269-270, 292. This is why it is the first and most important step in the valuation process. Id. at 41-42, 68.
[Id. at 161.]
Since only the municipality’s appraisal expert valued the subject property based on its acknowledged highest and best use, this court finds his approach more reliable.[4]
While the municipality’s appraisal expert’s determination concerning the interrelationship of the subject’s retail and warehouse areas is more reliable than taxpayer’s analysis, this court finds some flaws in his appraisal analysis. The municipality’s expert witness utilized four comparable rentals. This court finds that comparable number four is too dissimilar to be useful. In *492 fact, the municipality’s expert witness ultimately adjusted the comparable by 70%. With respect to the remaining three comparables, the witness averaged the contract rent of each comparable lease throughout the terms of each lease. Each lease commenced in 1998 and contracted for terms of seventeen, twenty, and thirty years duration. October 1, 1995, the relevant assessment date, occurs toward each of the comparable lease’s commencement date. According to the municipality’s expert witness, it is relevant to consider future rents for comparable properties as far in the future as 2022, the last year of the thirty year lease term in the municipality’s comparable lease No. 1. While projecting future income may be appropriate in the capitalization process, it is pure speculation in this case to consider rents received in 2022, which were contracted for in 1993. This case involves only the value of the subject as of October 1,1995.
This court finds that the contract rent as of the relevant assessment date is the most reliable evidence of market rent. The municipality’s three remaining comparables produce unadjusted rentals of $14.71 per square foot, $14 per square foot, and $20 per square foot respectively as of the relevant assessment date.
This court further finds that all adjustments made by the municipality’s expert witness are reasonable with the exception of the warehouse adjustment. A 20% downward adjustment from the comparables to the subject property is insufficient. Warehouse space occupies 44% of the subject, property an amount greatly in excess of warehouse .space in the comparables. Notwithstanding the role played by the warehouse space in the function of the retail business at the subject property, excess warehouse space exists. Accordingly, this court finds the appropriate adjustment is 30%, in addition to the typical adjustments made by the municipality’s expert witness which this court accepts. Recalculating the adjustments made by the municipality’s expert witness, which includes this court’s additional warehouse adjustment, the adjusted rental values for the comparables are $8.00 per square foot, $9.10 per square foot, and $11 per square foot. This court concludes that the average of said comparables at *493 $9.39 per square foot is a reliable market rent estimate for the subject property. Potential gross income under this analysis, therefore, is $1,461,225 ($9.39 x 155,615 sq. ft.).
This court finds that a proper vacancy and credit loss factor is 7%. In arriving at this conclusion, this court finds reliable the municipality’s expert witness’s suggestion that the Route 17 corridor in Paramus constitutes a strong commercial market. In effect, this court finds that a 5% vacancy factor is conservative enough; however, an additional 2% for credit loss is appropriate. Deducting this 7% ($102,286) factor from PGI results in EGI of $1,358,939.
Few differences exist between the parties’ estimates of operating expenses. This court accepts the municipality’s estimate of 4% of EGI for management, 6% of EGI for commissions, and 2% of EGI for reserves for replacement, totaling $163,073. Taxpayer’s suggestion of a $5,000 expense for professional fees is not extravagant, but certainly is an item that could be included in a liberal 4% management expense. Taxpayer’s estimate of $61,-250, which represents a landlord’s expense to improve the subject for a tenant, may be accurate in terms of calculation, but is highly speculative. It is uncertain that any such expenses would be solely the landlord’s obligation. The expenses might be shared or totally borne by tenant rather than landlord. Furthermore, there is no certainty that landlord’s responsibility for renovations, if any, would be as extensive as alleged by taxpayer’s expert witness.[5] Taxpayer’s expert witness failed to demonstrate that such an expense is customary with respect to the type of property described in this case, and within the Paramus commercial market. Accordingly, this expense is not allowed, and therefore, deducting *494 operating expenses ($163,073) from EGI produces net operating income (NOI) of $1,195,866.
With respect to the capitalization rate analysis, both expert witnesses utilized the same or similar information consisting of generally accepted appraisal publications. These publications, however, provide ranges of information permitting an appraiser to select within the range, based on experience. Each appraiser has, within the appropriate range, selected a capitalization rate most beneficial to the position espoused. The lower capitalization rate selected by the municipality’s appraisal expert, when applied to NOI, produces a higher value, whereas the higher capitalization rate utilized by taxpayer’s expert witness produces a lower value. Neither party has convinced this court that one position is more rehable than the other. Both parties are within the range set forth in the applicable publications. The taxpayer’s financial strength is not relevant; however, the strength of the Paramus real estate market is. Neither party has produced more evidence than the other with respect to the appropriate capitalization rate. This court finds, therefore, that a reliable capitalization rate for the subject property as of the relevant assessment date is 10%. When applied to the net operating income, this income capitalization technique produces a value for the subject property of $11,958,660.
Based upon the evidence and testimony, this court has accepted certain recommendations and opinions of the experts, while rejecting others. Although the municipality’s valuation methodology, on an overall basis, was more reliable than that of taxpayer’s expert witness, this court is not required to accept each and every aspect of same.
The Supreme Court of New Jersey in Glen Wall Assocs. v. Wall Tp., 99 N.J. 265, 280, 491 A.2d 1247 (1985), addresses the obligation and responsibility of a Judge of the Tax Court of New Jersey as follows:
As the Tax Court Enabling Act provides, “[t]he judges of the tax court ... shall be chosen for their special qualification, knowledge and experience in the matters of taxation.” N.J.S.A. 2A:3A-13.
*495 The Tax Court has not only the right, but the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question. [New Cumberland Corp. v. Roselle, 3 N.J.Tax 345, 353 (1981).]
See also Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965) (Division of Tax Appeals erred in not using evidence before it to ascertain true value of property and to fix assessment); Almax Builders, Inc., supra, 1 N.J.Tax at 39 (court adopted its own capitalization rate despite fact that plaintiff offered no evidence as to rate of return); Middlesex Builders, supra, 1 N.J.Tax at 315 (court established capitalization rate based on proofs).
The ratio of assessment, $9,615,000, to this court’s determination of true value as of October 1, 1995, $11,958,660, is 80.40%. The average ratio order Chapter 123, N.J.S.A. 54:1-35a(a), for the Borough of Paramus for 1996 is 82.94%. With the upper limit of the common level range being 95.38% and the lower limit being 70.50%, the ratio of assessment to true value, 80.40%, falls within the aforementioned common level range as promulgated by the Director of the Division of Taxation. As such, in accordance with N.J.S.A. 54:51A-6(a), the assessment must be affirmed. The Tax Court Administrator is, therefore, directed to enter judgment affirming the assessment.

 This is based on taxpayer’s expert witness's opinion that the total cost should be amortized over a ten-year' period.

 Both taxpayer's and-municipality's expert witnesses concluded that no effective tax rate factor would be included in the capitalization rate because the tenant would be responsible for real estate taxes.

 The municipality’s appraisal expert’s rebuttal appraisal report reevaluates the property in the same manner as taxpayer’s expert witness, and separately analyzes the value of warehouse space and the value of retail space.

 This court also rejects, for the same reasons, the municipality's expert witness’s rebuttal analysis separating the rental values of the warehouse and retail space.

 In Pine Plaza Assocs. v. Hanover Tp. 16 N.J.Tax 194 (Tax 1996), the Tax Court generally determined that tenant improvement costs may be deducted as an operating expense. In that case, however, tire court found the proofs inadequate to establish such allowance as a “customary, regularly recurring landlord expense in the strip shopping center market in which the subject property is located.” Id. at 212.