**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5294-18T2

GARY W. FISCHER, JR.

    Plaintiff-Respondent,

v.

JULIE D. FISCHER,

    Defendant-Respondent/
    Cross-Appellant,

v.

GARY FISCHER, SR.,
Individually and as Administrator
of the Estate of MARIE FISCHER,

    Third Party Defendant-
    Appellant/Cross-Respondent.

_____

Submitted November 17, 2020 – Decided January 13, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-19-0496-16.

Nish & Nish, LLC, attorneys for appellant/cross-respondent (Noelle K. Nish, on the briefs).

Gruber, Colabella, Liuzza, Thompson & Hiben, attorneys for respondent/cross-appellant (Mark Gruber and Natalie L. Thompson, on the briefs).

Gary W. Fischer, Jr., respondent pro se.

PER CURIAM

After plaintiff Gary W. Fischer, Jr., filed for divorce from defendant Julie D. Fischer, defendant answered and included a claim against plaintiff's parents, third-party defendants Gary Fischer, Sr. (individually: Senior) and Marie Fischer[1] (collectively: the senior Fischers) alleging they "promised to deed the [described] property owned by them" in Stillwater (the property) upon which she and plaintiff would construct a one-family dwelling where she, plaintiff and their children would reside; plaintiff, in turn, agreed to sell her home in Hopatcong; she and plaintiff relied on the senior Fischers' promise and "invested time, money, and constructed a dwelling"; and the senior Fischers "promised to deed the property . . . upon completion of the dwelling." She claimed she "has

---

[1] According to defendant's merits brief, after Marie Fischer's death during the pendency of this action, the pleadings were amended to name Senior as administrator of her estate. Nothing in the appellate record confirms that amendment; but, whether made or not, the amendment has no bearing on our analysis or decision.

a legal and equitable interest in and into said dwelling and into the land and improvements thereon," demanding judgment "imposing a constructive trust upon the property" and "damages for the value of [her] equitable interest in the property and dwelling [and] counsel fees."

The senior Fischers appeal from the trial judge's Dual Final Judgment of Divorce and Related Reliefs, entered after an eleven-day bench trial, granting defendant a monetary judgment in the amount of $167,000 to be secured by a continuing constructive trust against the property, arguing defendant failed to prove: they gifted the property; any promise or agreement by them regarding the property; if an agreement was made, defendant and plaintiff fulfilled its terms. They also argue that the monetary award is unsupported by the record.

In her cross-appeal, defendant argues the trial court abused its discretion in finding she was entitled to only one-half of the property's value and denying her counsel fees.[2]

Recognizing the trial court's factual findings in a non-jury case "are binding on appeal when supported by adequate, substantial, credible evidence,"

_____

[2] Without filing a cross-appeal, plaintiff submitted a pro se brief arguing he, by waiving any claim against his parents, did not waive his rights regarding the equitable distribution of assets, including, if it is ruled a marital asset, the property.

A-5294-18T2

Gnall v. Gnall, 222 N.J. 414, 428 (2015), and, under our limited scope of review, will not be disturbed "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice," Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963); see also Seidman v. Clifton Savs. Bank, S.L.A., 205 N.J. 150, 169 (2011), we agree with the senior Fischers that the proofs did not establish their gift of the property but affirm the trial court's award based on promissory estoppel and its denial of counsel fees.

To prevail under the theory of promissory estoppel, defendant was required to establish:

> (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.
>
> [Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978).]

The trial court found "there was a clear and definite promise made by the senior Fischers to build the property" for plaintiff and defendant. Although the court found Senior's testimony was largely unbelievable, the court emphasized Senior's deposition testimony about his intention to build homes for all his

4

children and his trial testimony that he and Marie purchased the seventy-eight-acre tract, which includes the property, to give each of his children the "opportunity" to live near the senior Fischers. The court also highlighted Senior's deposition and trial testimony admitting he offered to give plaintiff and defendant the property, just as he did with his other son and his wife, David and Hulda, in order for his family to be close to the senior Fischers, all living on subdivided parcels of the tract they owned. The court found the senior Fischers promised to transfer "the same type of deed" they had given to David and Hulda for another subdivided parcel of the tract under the same terms. Finding defendant's testimony "credible and compelling," the judge found:

> [T]he cost to build the home would be paid for by the senior Fischers. [Plaintiff] would perform most of the labor and when the home was near completion and qualified [for] a certificate of occupancy, a mortgage would be obtained by [plaintiff] and [defendant] so they could generate monies to pay for the finishes[] which would include flooring, appliances, and paint. [Defendant] testified that there had been no discussion of any obligation to repay the senior Fischers for any expenses incurred prior to obtaining the certificate of occupancy.

The trial court found the senior Fischers promised to provide a deed when the certificate of occupancy was issued.

A-5294-18T2

The trial court also noted Hulda's testimony that she and her husband did not pay anything directly to the senior Fischers at or before the receipt of the deed to their property, and they did not pay the senior Fischers any money from the construction loan they obtained after they received the deed. The court, finding Hulda, plaintiff and Senior "lied under oath repeatedly," concluded no evidence contradicted defendant's testimony that the senior Fischers agreed to pay for the construction of David's and Hulda's residence, and that after they received the deed and certificate of occupancy, David and Hulda obtained a loan for finishes. The court found that "was precisely the same plan that was being followed" for plaintiff and defendant until October 2015.

The trial court also found defendant's credible testimony proved the senior Fischers' promise was made with the expectation that defendant and plaintiff would rely thereon "as they were encouraged to sell [defendant's] premarital home" in Hopatcong and because "all parties invested time and money into the construction of the residence." Defendant purchased the Hopatcong home in which she and plaintiff lived after they returned from their honeymoon. Shortly thereafter, plaintiff told defendant he wanted to list the Hopatcong home because the senior Fischers suggested the couple "move into a

home they already owned in Fredon" where they could live at no cost and save money while their home on the property was being constructed.

Both defendant and plaintiff relied on the senior Fischers' promise, causing a "detriment of a definite and substantial nature." Malaker Corp. Stockholders Protective Comm., 163 N.J. Super. at 479. Based on defendant's credible testimony, the trial court found she, in reliance on the promise of a home on the property that was under construction, sold her Hopatcong home at a loss requiring plaintiff to bring cash to the closing because the purchase price was insufficient to cover the costs of sale. The court further found plaintiff forwent lucrative full-time employment and remained at the family business while he "devoted substantial time and effort for which he was not compensated to construct the residence." As the trial court found, plaintiff "designed the house and constructed it utilizing steel, which was the family business." While some site work was completed prior to the marriage, "[t]he plans for the exterior of the house were started in 2011 . . . and the floor plans for the interior of the home were finalized in 2012." Defendant also participated in the design of the floor plan. Construction began in 2012, and plaintiff completed "the majority of the work," including the installation of steel panels, roof, chimney, and layout of windows, front door, room framing and staircase.

The court also perceived the parties' marriage was "completely shaped" by the senior Fischers' promise because the "countless hours" plaintiff was required to spend constructing the home altered the family dynamic. The court discerned but for the senior Fischers' promise, family time would not have been sacrificed. The couple installed a playground and the children kept toys at the construction site because they spent so much time there. The site also contained a picnic table where the family could eat meals. The court took particular note of the family placing their "handprints in the [wet] cement at the foot of the basement stairs, marking the home as theirs."

The promise also impacted the couple's living arrangements after the sale of the Hopatcong home. After they moved into the Fredon residence, defendant and Marie had a disagreement in 2012 because Marie entered the residence and moved the younger couple's belongings. Although they continued to live there and construction of the residence on the property continued, plaintiff was informed by his parents that they wanted the couple to leave the Fredon residence, resulting in their move into the condominium David and Hulda were vacating in order to move into their Stillwater residence. Eventually, they had to move out of the condominium in the fall of 2015 and reside with the senior Fischers while the house on the property was still under construction; they

8

moved their furniture and possessions into the basement of the unfinished house on the property.

Abiding by our standard of review, we determine the trial court's conclusions were supported by adequate, substantial evidence that the trial court found credible; that evidence—chiefly defendant's testimony—established the elements of promissory estoppel and justified the trial court's conclusion. Gnall, 222 N.J. at 428. "The essential justification for the doctrine of promissory estoppel is the avoidance of substantial hardship or injustice were the promise not to be enforced." Malaker Corp. Stockholders Protective Comm., 163 N.J. Super. at 479. We agree with the trial court that "[t]he promise of the senior Fischers should be enforced in equity."

To the extent the senior Fischers argue the facts of the case were contrary to the trial court's findings—including that there was never a promise or agreement made by them, and defendant sold her Hopatcong home for reasons unrelated to the property—we defer to the trial court's detailed determinations that Senior, plaintiff and Hulda were not credible and that defendant was. "Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re

Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997); see also Cesare v. Cesare, 154 N.J. 394, 412 (1998).

The equitable remedy declared by the trial court comprehends that the residence was not fully completed at the time plaintiff filed for divorce in June 2016. The court did not award defendant full value of the home as completed and transferred. The value of the unfinished home and the land at the time the complaint was filed reflects the extent of the detriment suffered by defendant and plaintiff while they were married. That plaintiff and defendant divorced before the promise was fulfilled cannot act to preclude defendant's entitlement to compensation based on her reliance; nor can it result in a windfall to the senior Fischers because the residence was not completed prior to the divorce, after prolonged construction starting in 2012.

The senior Fischers' argument that the trial court based its valuation of the unfinished home at $234,000[3] on defendant's expert's "opinion represent[ing] nothing more than rank speculation . . . based on improper analysis" is without

---

[3] The total valuation of $334,000 by defendant's expert included land value, based on sales comparisons, of $60,000 and the value of site improvements at $40,000. The land and site improvements were not valued by the senior Fischers' expert because Senior instructed him to exclude same from his report. On cross-examination, however, that expert estimated an additional $100,000 could be added to his valuation for the land and site work. Thus, there is no dispute as to that portion of the valuation.

merit. Contrary to defendant's contention, there was competent evidence offered by defendant's expert upon which the trial court based its valuation.

Defendant's witness was qualified as an expert in real estate appraisal without objection. The trial court accepted defendant's expert's explanation that he did not use the market approach utilizing comparable sales—"generally accepted as an appropriate method of estimating value for a residence . . . the preferred method when comparable sales are available," Greenblatt v. Englewood City, 26 N.J. Tax 41, 53 (Tax 2011)—because he could not find comparable "sales of partially finished homes of this caliber" within the three years prior to the valuation. The trial court also accepted the expert's testimony that the steel fabrication used in the construction of the residence was akin to that used in commercial buildings, making the residence unique, justifying the use of the cost approach for valuing the residence, "normally relied on to value special purpose or unique structures for which there is no market." Borough of Little Ferry v. Vecchiotti, 7 N.J. Tax 389, 407 (Tax 1985).

In appraising the unfinished residence, defendant's expert first utilized a program in which he input data about the residence as it existed in 2016; "the base cost of the structure" was set by the program at "$62 a foot for the unit cost." The expert also consulted with a representative of a commercial and

residential contractor that performs steel frame construction in the northern New Jersey region who gave an estimate cost of "approximately $65 a foot to get the structure to where it is."

The trial court rejected the valuation given by the senior Fischers' expert whose sales-comparison valuation was $200,000, concluding defendant's expert's testimony was "more reliable, carrie[d] a more solid foundation and explanation supporting his numbers and was overall more sound and credible." As the fact-finder in a bench trial, "the weight to be given to the evidence of experts is within the competence of the [trial court]." LaBracio Family Partnership v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001) (finding the trial court acted within its discretion when it considered the conflicting expert opinions, accepted one expert's testimony and rejected the other). The trial court was within its discretion in accepting defendant's expert's valuation.

The valuation approach used to determine the fair market value of real property "depends upon the particular facts and the reaction to" those facts by the experts. City of New Brunswick v. State Div. of Tax Appeals, Dept. of Treasury, 39 N.J. 537, 544 (1963); see also Borough of Little Ferry, 7 N.J. Tax at 407. There is not one required approach when valuing real property, Samuel

Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App. Div. 1965); see also Genola Ventures-Shrewsbury v. Borough of Shrewsbury, 2 N.J. Tax 541, 551 (Tax 1981), and the use of two or more approaches together to establish value has been recognized as appropriate, Palisadium Mgmt. Corp. v. Borough of Cliffside Park, 29 N.J. Tax 245, 264 (Tax 2016).  When the goal is to ultimately determine the true value of the property, an expert may rely on his adequately supported knowledge and experience to make that determination. Samuel Hird & Sons, Inc., 87 N.J. Super. at 72; see also Genola Ventures-Shrewsbury, 2 N.J. Tax at 551-52.  "[W]hen the proofs submitted in support of one approach overshadow those submitted in support of any other approach, the court may conclude which approach should prevail."  VBV Realty, LLC v. Scotch Plains Twp., 29 N.J. Tax 548, 559 (Tax 2017).  That is exactly what the trial court did here.  We find no error or abuse of discretion in the trial court's conclusion that defendant was entitled to a share of the property valued at $334,000 based on the theory of promissory estoppel.

Our determination renders it unnecessary to address the trial court's conclusion that the senior Fischers' action constituted a gift, particularly because

it involves an element not needed to establish promissory estoppel: delivery.[4] We, nonetheless, disagree with the trial court's determination that delivery of the gift occurred when defendant's "Hopatcong home was . . . sold on August 28th, 2011," finding that the sale was "an enormous and pivotal . . . transaction in the eyes of the [c]ourt[,] . . . equivalent [to] the required delivery." The sale of that home had no relation to the transfer by gift of the Stillwater property, an act usually accomplished by deed. H.K. v. State, 184 N.J. 367, 382 (2005) (citing N.J.S.A. 46:3-13). And there were no other indicia of delivery of the property.

Turning to defendant's cross-appeal, we find her argument that the trial court abused its discretion by only awarding her one-half of the value of the home to be without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). Defendant argues, without citing any supporting law, because the property was martial property and plaintiff did not wish to assert a claim against his parents for the property, she is entitled to the full cash value of $334,000.

---

[4] "[A] valid gift has three elements. First, the donor must perform some act constituting the actual or symbolic delivery of the subject matter of the gift. Second, the donor must possess the intent to give. Third, the donee must accept the gift." Pascale v. Pascale, 113 N.J. 20, 29 (1988); see also Bhagat v. Bhagat, 217 N.J. 22, 40-41(2014).

A-5294-18T2

As we have already recognized, the trial court deemed it equitable that defendant be awarded one-half of the value of the senior Fischers' promise. By determining that an award to defendant of "the full value of $334,000 . . . would be a windfall" to her, the trial court did not "'fail[] to consider controlling legal principles,'" make "'findings inconsistent with or unsupported by competent evidence,'" utilize "'irrelevant or inappropriate factors,'" and reach a "decision [that] 'rest[s] on an impermissible basis.'" Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (first quoting Storey v. Storey, 373 N.J. Super 464, 479 (App. Div. 2004); and then quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). Thus, it did not abuse its discretion.

Defendant's argument that the trial court erred in denying her counsel fees also lacks merit. The trial court can award attorney's fees at its discretion, R. 4:42-9(a)(1), and we will disturb those determinations "only on the rarest occasions, and then only because of a clear abuse of discretion," Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

The trial court considered:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5)

15

any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

It also considered the factors under Rule 1.5 of the Rules of Professional Conduct:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

16

We affirm the denial of counsel fees to defendant for the reasons set forth in the trial court's comprehensive and cogent analysis of those factors in its oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5294-18T2